## Commonwealth v. Rubin

*James F. Marx,* district attorney, and *C. Wilson Austin,* assistant district attorney, for Commonwealth.

*David Levinson* and *Leonard R. Titelman,* for defendant.

SCHAEFFER, P. J., June 2, 1941.—Defendant, having been convicted upon an indictment charging perjury, has moved in arrest of judgment and for a new trial. The indictment upon which the verdict of guilty which is now in question was returned was one of a number found against this defendant. Four indictments were submitted to the jury at one time, two of which charged perjury, and two, violation of the election laws of the Commonwealth. One indictment charging perjury and one charging viola-

tion of the election laws were based upon defendant's affidavit to a nominating petition circulated in Berks County for the purpose of placing certain candidates of the Communist Party for the offices of President of the United States, Vice President, 36 presidential electors, United States Senator, Auditor General, and State Treasurer of Pennsylvania upon the ballot at the fall election of 1940. The other two indictments, one for perjury and one for violation of the election laws, were based upon defendant's affidavit to a second nominating petition similarly circulated and also intended to make nominations for the same offices.

Indictment in no. 21, December sessions, charged that defendant did "commit wilful and corrupt perjury by unlawfully, wilfully, and corruptly making a false oath to a nominating petition, deposing and saying that the signers in the said petition signed the same with full knowledge of the contents thereof and that each signed on the date set opposite his or her name whereas in truth and fact the following named did not sign said petition although their names appear thereon: Elizabeth Bonds, 1010 North Thirteenth Street, Reading [and 14 other named persons], contrary to the form of the act, &c."

Bill no. 22 charged that defendant "did make a false statement in an affidavit required by the provisions of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, which was appended to and accompanied the nomination petition of the Communist Party, in that he swore that the following named persons signed said petition, whereas in truth and in fact the said persons did not sign said petition although their names appear thereon and said statement was false: Elizabeth Bonds, &c. [being the same names as are set forth in bill no. 21], contrary, &c."

Bill no. 183 charged the making of an affidavit as in bill no. 22 which was false in that defendant swore that certain named persons signed the petition, whereas in truth and fact they had not signed, and also that he swore that another list of people signed with full knowledge of

the contents of the petition, whereas, though they signed, they did so without full knowledge of its contents.

Bill no. 184 charged wilful and corrupt perjury in corruptly making a false oath that certain named persons (being the same persons named in the first clause of bill no. 183) had signed the petition, whereas in fact they had not signed and also in making a false oath that certain other persons (being the same persons named in the second clause of bill no. 183) had signed with full knowledge of the contents whereas in fact they had not been informed nor did they have any knowledge when they signed that the petition was a nominating petition of the Communist Party.

When the cases were called for trial, defendant's counsel moved to quash the indictments. The more important grounds upon which these motions were based will be considered later. Defendant also asked for a bill of particulars. After consideration the court granted the application for a bill of particulars as to the latter portion of bills nos. 183 and 184, for the reason that defendant was entitled to more specific information as to the charge that certain persons signed without full knowledge of the contents of the petition. As the district attorney elected to proceed forthwith to trial upon the balance of the charges contained in the indictments, the charges of perjury and false swearing growing out of the allegation that defendant falsely made affidavit that "the signers signed with full knowledge of the contents of the nomination paper" were withdrawn from the cases and not submitted to the jury.

The issues were, therefore, resolved to whether or not defendant corruptly committed perjury or swore falsely that each of the signers whose names appeared upon the nomination papers in fact signed said petitions.

The jury returned a verdict of guilty on bill no. 184 and not guilty on the other three bills.

One of the reasons now urged in support of defendant's motion for a new trial is the refusal of the court to grant

defendant's motion for a continuance. Counsel contend that there was insufficient time between December 3rd when they obtained copies of the indictments and the date of the trial, December 9th. But we must point out that defendant was arrested upon these several charges on August 28th—more than three months earlier. That surely was ample time in which to prepare the defense. Defendant was represented by counsel at least from the date of the alderman's hearing on September 9th. The indictments, again, were returned by the grand jury on November 29th and from that day on were public records open to the inspection of counsel in the office of the clerk of courts. It is the time that elapses between the arrest and the trial that is important; such interval of time must be reasonably adequate to enable a defendant properly to prepare his defense: Commonwealth v. Schurtz, 337 Pa. 405. Here the time was amply sufficient.

In support of the motion to quash the indictments defendant made two points. He contended that bills nos. 22 and 183 were defective in that they did not charge that the false statement was made "knowingly". See section 1813 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3513. However, as the jury returned verdicts of not guilty as to these bills, this issue is now moot.

Defendant also contends that the Pennsylvania Election Code of 1937 is both inclusive and exclusive in that it completely covers all matters pertaining to elections and that, therefore, all acts which are by it declared to be offenses are punishable solely and exclusively in accordance with its terms and are, therefore, not cognizable under any other rule of law, common or statutory. Defendant cites section 63 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §563, which is as follows:

"Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may

be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail."

Arguing that the perjury indictments, being bills nos. 21 and 184, are based upon the Criminal Code which is a general law and that the false swearing indictments, nos. 22 and 183, are based upon section 1813 of the Pennsylvania Election Code of 1937, which defendant terms a special law, defendant contends that effect must be given to the provisions of the Election Code and that the provisions of the Criminal Code must be disregarded, especially because he contends that the Election Code was enacted subsequently to the Criminal Code. But this last contention is based upon a curious error, for the criminal code in effect in March 1940, when defendant took the affidavits which are the basis of these prosecutions, was not the code of March 31, 1860, P. L. 382, but The Penal Code of June 24, 1939, P. L. 872, which went into effect on September 1, 1939. Therefore, the argument based upon the fact that the so-called special provision was enacted subsequently to the general provision has no application here.

Now section 1813 of the Pennsylvania Election Code of 1937 (upon which bills nos. 22 and 183 are based) provides that "If any person shall knowingly make a false statement in any affidavit required by the provisions of this act, to be appended to or to accompany a nomination petition or a nomination paper, or if any person shall fraudulently sign any name not his own to any nomination petition or nomination paper, or if any person shall fraudulently alter any nomination petition or nomination paper without the consent of the signers, he shall be guilty of a misdemeanor . . ." The affidavit "required by the provisions of this act" is provided for by section 951 (25 PS §2911), which says:

"Each sheet shall have appended thereto the affidavit of some person . . . setting forth—(1) that the affiant is a qualified elector . . .; (2) his residence . . .; (3) that the signers signed with full knowledge of the contents of the nomination paper; (4) that their respective residences are correctly stated therein; (5) that they all reside in the county . . .; (6) that each signed on the date set opposite his name; and (7) that, to the best of the affiant's knowledge and belief, the signers are qualified electors . . ."

Section 322 of The Penal Code of 1939, however, provides that "whoever wilfully and corruptly makes false oral or written statements, or testimony upon oath or affirmation, legally administered either before any committee of the Legislature, or in any judicial proceeding . . . or whoever in taking any other oath or affirmation required by any act of Assembly of this Commonwealth . . . is guilty of perjury, a felony . . ."

It is apparent that the offenses defined in section 1813 of the Election Code, and in section 322 of The Penal Code, are not identical and precisely the same; but a single act of false swearing may constitute a breach of both. To constitute the felony, however, the making of the false statement must be shown to have been done "corruptly"—which is not required to be shown in the misdemeanor. In the latter case it is sufficient if the statement be under oath and set forth as facts matters which are untrue and which are known by the affiant to be untrue and which are made with an intent to deceive.

We can find no evidence of a legislative intent to exclude from its definition of perjury in The Penal Code of 1939 the making of a false affidavit for which penalties are provided in section 1813 of the Election Code. There is no qualification expressed in The Penal Code. Certainly that is a general law and is the last statement of the will of the legislature. The fact that a certain false affidavit to a nominating petition may render the affiant liable to two prosecutions is not novel in the law; there

are many instances in which a person who performs one act may be liable to be charged with two or more offenses. In the recent case of Commonwealth v. Pagano, 33 Berks 233, the driver of a motor vehicle, who had been convicted of reckless driving in a summary proceeding, was also convicted upon two separate bills of indictment one of which charged him with involuntary manslaughter in causing the death of A and the other of which charged him with aggravated assault and battery upon B. See Commonwealth v. Bergen, 134 Pa. Superior Ct. 62. Commonwealth v. Haines, 130 Pa. Superior Ct. 196, is a case in which a defendant was indicted upon two bills of indictment, one of which charged him with a violation of the election laws and the other, with perjury. Both bills were based upon the same oath taken by defendant and he was adjudged guilty upon both. Although the judgments were reversed upon the ground that the Commonwealth had failed to show that what defendant swore to was false, there was no discussion of the fact that by his single act defendant became liable to two prosecutions. Where the same act of defendant constitutes the two offenses, he cannot be punished upon more than one; in the making of one false affidavit, there is but one injury to the Commonwealth: Commonwealth v. Ernesto et al., 93 Pa. Superior Ct. 339.

Instead of being charged in separate indictments, the charges contained in bills nos. 21 and 22 could have been set forth as separate counts in the same indictment and similarly as to bills nos. 183 and 184.

Another matter urged by defendant is that the court erred in refusing to grant separate trials as to each name. It is difficult for the court to understand precisely what is here meant. Defendant was called for trial upon four indictments; there was no request for separate trials upon each indictment. Two indictments charged perjury and two charged the making of false statements in the affidavits. But two affidavits were involved. Each affidavit was attached to one nominating petition. The pri-

mary issue in each case was whether or not the facts sworn to by defendant were or were not false as charged in the indictment. Did he or did he not swear falsely that all the persons whose names appeared upon the petition had signed the petition? There is no way known to the law by which more than one trial could, in the first instance, be had upon each indictment, no matter how many of the signatures upon the original petition were alleged to be spurious. The fact that the trial judge in his charge separated some of the names from the other names set forth in the indictment has no bearing upon the right of defendant to a separate trial as to each name; but a reading of the court's charge to the jury shows clearly that, as to some of the persons whom the indictment named as not having signed the petition, the judge was of the opinion that the testimony was insufficient to support a finding that they had not signed and therefore could not be the basis for a verdict of guilty.

In the case before us there is no doubt as to the sufficiency of the evidence. The names of Josephine Lombardo, Samuel Lombardo, and Anthony Lombardo, all of 42 Neversink Street, Reading, appear as signers of the nomination petition in question. Samuel Lombardo testified that he had not written his name upon the petition and had not authorized anyone to sign for him and was not present when his name was signed. Anthony Lombardo testified that he is unable to write and that he did not tell anyone to put his name on the paper. Josephine Lombardo, daughter of Anthony and sister of Samuel, testified that defendant came to her door, and asked her who over 21 years of age lived in the house, and that she replied, herself, her father, and her brother. Thereupon she signed her own name. In answer to defendant's query, she told him that her father and brother were working and were not at home, whereupon defendant said, according to Josephine, "You put their names down, too, if they are over 21." She complied by writing both names. Defendant, when upon the witness stand, offered neither

denial nor explanation of this testimony. Taken together these facts are ample to support the verdict of guilty: Commonwealth v. Bradley, 109 Pa. Superior Ct. 294. The testimony of the three Lombardos, if believed, was proof of the falsity of defendant's statement under oath accompanying the petition that the father and brother had signed the petition on the date set opposite their names.

Defendant makes the vague charge that the Commonwealth's testimony was secured as a result of fear, coercion and intimidation which "must have impelled" witnesses to repudiate their signatures. There is no support whatever of this allegation in the record. Defendant exercised his right to cross-examine fully. The credibility of each witness was solely for the jury. We are not concerned with remote motives on the part of the prosecution; the issue was solely whether or not defendant had violated the law in the manner charged. The fact that he was an active member of one political party rather than of another did not, we think, influence the jury against him; he had examined each juror upon his voir dire and the jury did acquit him upon three of the four bills. Counsel have also from time to time urged the specious argument that if this defendant had obtained signatures to, and made the same affidavit upon, a petition for the nomination of candidates of some other political party he would not have been prosecuted. In reply we can merely say that, if anyone violates the law in circulating any nominating petition, and such fact is brought to the attention of the law's prosecuting officers, they should be prosecuted promptly and vigorously. But the law cannot accept as a principle the claim that a violation of the law by A gives B a right to commit a similar violation of the law with impunity. One crime does not repeal or make inoperative the law against crime.

We believe that defendant has had a fair trial. The fact that he belongs to a minority political party entitled him to no less and no more protection of the laws than that to which every other citizen is entitled. The sole question be-

fore the court and jury was whether he was guilty or not guilty as charged. The jury was, we think, warranted by the evidence and the law in concluding beyond a reasonable doubt that he was guilty. He, like everyone else, is bound by our laws.

And now, to wit, June 2, 1941, the motions for a new trial and in arrest of judgment are both discharged and an exception to this action is directed to be noted.