Commonwealth *v.* Schurtz, Appellant.

406

Argued November 28, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert V. Moser,* with him *Abe L. Snyder* and *Russell S. Machmer,* for appellant.

*Robert M. Fortney;* District Attorney, for appellee.

OPINION BY MR. JUSTICE BARNES, January 2, 1940:
The defendant, who was employed upon a project of the Works Progress Administration, in Lower Augusta Township, Northumberland County, shot and killed his foreman, Edward C. Fisher, on April 21, 1939. Twelve days later, on May 3, 1939, he was brought to trial. His motions for change of venue and for a continuance

were refused, and he was convicted of murder in the first degree with the penalty of death. The court below denied him a new trial, entered judgment on the verdict, and imposed sentence. In this appeal defendant assigns as error the refusal of his several motions, the failure of the trial judge to withdraw a juror because of allegedly improper remarks by the district attorney, and certain portions of the charge to the jury which he deems incorrect and prejudicial.

There is little dispute as to the facts. Defendant, married, and the father of a twelve-year-old son, had quarreled with other W. P. A. foremen who preceded Fisher at this project. On April 20, 1939, the foreman gave defendant written "notice of complaint" made in triplicate, in which it was stated that defendant's "method of work [was] too slow for satisfactory production, too much talking, will be necessary to give more interest to work to remain on project. Second warning will mean suspension." Defendant complied with Fisher's request that he sign the paper as an acknowledgment that he had been notified of the complaint. He received one copy of the notice, and the remaining two were retained by Fisher. That evening he brooded over the incident, discussing it with acquaintances and his wife, and worrying over the effect that it would have on his future employment. He testified that he believed his signature on the notices was an admission by him that he was too lazy to work, which would result in his dismissal and disqualification to receive "relief" for himself and family. After a sleepless night, he procured a loaded revolver which he kept in his home and carried it to his work, intending, according to his testimony, to commit suicide if he could not persuade Fisher to destroy the notices.

When he reached the place of his employment on the morning of April 21, 1939, he requested the timekeeper not to check his card until he had a "show-down" with the foreman. When Fisher arrived, defendant said

he wished to talk to him privately, and they walked together to a stone wall a short distance from the office. There was an altercation, during which Fisher refused to alter or surrender the notices. As he returned to the office, defendant followed him, continuing the discussion. He testified that he asked the foreman to consider his family, but that he replied: "I don't give a damn about your family, to Hell with them." With the remark that the foreman was not going to deprive him of his livelihood, defendant drew his revolver and shot Fisher in the back of the neck as he was ascending the steps to the office. He died almost instantly. Defendant, apparently calm, menaced another employee with his gun and compelled him to drive to police headquarters where he surrendered voluntarily. Several times while in custody defendant stated that he knew the consequences of his act, and was sorry only for the stigma that would attach to his son. His defense at the trial was that when he shot Fisher his mind was in such a condition that he was mentally irresponsible.

We have reviewed the record and are satisfied that it discloses a homicide with all the elements of murder in the first degree, and the jury was warranted in so finding. Therefore, the question is whether any of the assignments of error is of sufficient merit to require us to reverse the judgment and sentence imposed.

Defendant complains of the refusal of the motion for a continuance. The reason given for the request was that his counsel found the nine days that elapsed from his appointment on April 24 to the trial on May 3, 1939, insufficient time to prepare his case. The facts of the homicide were clear and the names and addresses of all persons acquainted therewith were easily ascertainable. They were close at hand and their attendance could be compelled by process. His counsel does not point out in what respect he was handicapped by the brevity of time, but merely asserts that nine days

was insufficient to plan the defense of any murder case, no matter how simple.

This contention is conclusively answered by our decision in *Com. v. Deni,* 317 Pa. 289, where we held that the trial judge committed no error in refusing to grant a continuance of a murder case called for trial the ninth day after the homicide, the facts being clear and no opportunity being denied defendant to procure necessary witnesses. We there said (p. 292): "In determining whether a continuance should be granted in any criminal case, the nature of the crime and the circumstances attending it must be considered. The occurrences surrounding a crime, its preparation and execution, may be so involved that more time is required to prepare a defense than where such complicating incidents are not involved." In *Com. v. Lockhard,* 325 Pa. 56, counsel was allowed but eight days to prepare the defense, while in *Com. v. Flood,* 302 Pa. 190, counsel for defendant were appointed on January 21, and the trial was set for the following February 3, 1930. In these cases we held that it was not error to refuse a continuance, and said that while sufficient time for adequate preparation should always be given in cases of this character, so that a complaint of undue haste cannot fairly be made, "delays through unwarranted and unnecessary continuances should cease": *Com. v. Flood,* supra, (p. 196).

An application was made to the court for a change of venue upon the ground that the public mind had been prejudiced against defendant by unfavorable articles in the local newspapers, by the public military funeral of the deceased, and by the wide discussion of the crime in the community. It is conceded that nothing appears in the record to show that local prejudice or hostile sentiment affected the trial in any way, and that these feelings were too "intangible" to afford instances of concrete expression. The newspaper articles referred to were not offered in evidence, there was no public dem-

onstration against defendant before or at the trial, and there is no allegation or proof that the jury was led to its verdict by bias or prejudice. Under these circumstances it was within the sound discretion of the trial judge to grant or refuse the motion, and to determine whether there existed such prejudicial animosity toward the defendant in the public mind that the ordinary safeguards available to him in the selection of jurors would be ineffective to secure a fair trial within that jurisdiction. Here, there is shown no such abuse of discretion by the court as to warrant us in reversing its determination of that question. See *Com. v. Buccieri*, 153 Pa. 535; *Com. v. March*, 248 Pa. 434; *Com. v. White*, 271 Pa. 584; *Com. v. Skawinski*, 313 Pa. 453; *Com. v. Riggs*, 313 Pa. 457.

Although no specific objection was made to the charge, defendant now claims that he was prejudiced by the following passage: "Every unlawful killing is presumed to be murder,—that is, murder of the second degree,—and the burden is upon the defendant to reduce the grade of the crime to manslaughter, where it is proven beyond a reasonable doubt that the defendant committed the deed; and the burden is upon the Commonwealth to raise the degree of crime from murder of the second degree to murder of the first degree." It is urged that the failure of the trial judge to define the burden which must be borne by the defendant raised the inference that he must prove the elements of manslaughter beyond reasonable doubt, thereby causing the jury to forget the primary burden of the State. The excerpt quoted will not support such an inference. The words are almost identical to those used in the classic charge of Justice AGNEW in *Com. v. Drum*, 58 Pa. 9, which we recently approved in *Com. v. Kluska*, 333 Pa. 65. In *Com. v. Lee*, 226 Pa. 283, upon which defendant relies, the trial judge added to a statement similar to the one here quoted: (p. 284) "If you are satisfied beyond a reasonable doubt that malice did not exist, then the

killing would be manslaughter." It is clear that there is an obvious difference in the two charges.

The trial judge not only concluded his charge with a clear exposition of the presumption of innocence and the measure of the Commonwealth's burden, but he also read and affirmed defendant's point for charge expressing the applicable rule of law concisely and correctly. Isolated excerpts torn from the heart of the charge cannot be considered apart from the context, and if the whole is accurate and fair, as it was in this case, the parts objected to do not form a proper basis for reversal. See *Com. v. Glenn*, 321 Pa. 241; *Com. v. Becker*, 326 Pa. 105; *Com. v. Stelma*, 327 Pa. 317.

We find no merit in defendant's contention that the trial judge committed prejudicial error in failing to recall to the jury in his review of the evidence that portion of the testimony of one witness which defendant deemed favorable to his case. The evidence was, on the whole, well and fairly summarized, but the jury was expressly instructed to rely upon its own recollection of the testimony. At the close of the charge counsel for defendant was given ample opportunity to correct any inadvertent omissions of evidence from the court's summary, and expressed himself satisfied. There is no necessity that the trial judge recite all of the testimony, and here the omission complained of was harmless. See *Com. v. Becker*, supra.

It is unnecessary to discuss the remaining questions raised by defendant. We have carefully considered them, and find that they are without merit. Our review of the record convinces us that he had a fair trial, and was properly convicted and sentenced.

The judgment is affirmed, and the record remitted to the court below for the purpose of execution.