365 A.2d 140

**COMMONWEALTH of Pennsylvania**

v.

**Euzzell Angelo Sylvanus SCOTT, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided Oct. 20, 1976.

260

262

Dusan Bratic, Steven Foldes, Joshua D. Lock, Harrisburg, for appellant.

Marion E. MacIntyre, Second Asst. Dist. Atty., Reid H. Weingarten, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant, Euzzell Angelo Sylvanus Scott, was convicted of murder in the first degree and robbery. After denying post-trial motions, the court imposed a life sentence for the murder conviction and a consecutive term of ten to twenty years for the robbery conviction. These appeals followed.[1]

The charges against appellant arose from the robbery of Louie's Dream House in Harrisburg on November 9, 1973, during which Vivian Proctor was shot and killed. Appellant was arrested in May of 1974 following his extradition from Ohio. On this appeal, he raised several issues for our consideration.

## I. *Pre-Trial Motions*

Appellant argued that the denials of his motions for a continuance, for appointment of an investigator, and to secure a material witness under the Uniform Act to Secure Attendance of Witnesses[2] were violative of due process. It was asserted that these denials deprived appellant of adequate preparation for his trial particularly because he was unable to properly investigate potentially exculpatory witnesses in Ohio.

---

1. Our jurisdiction over the murder conviction is by statute. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975). Although the appeal was not properly taken, our jurisdiction over the robbery conviction has been perfected since it arose from the same facts as the murder and the Commonwealth has failed to object. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, Art. V, § 503(a) 17 P.S. § 211.503 (Supp.1975). *See Commonwealth v. London,* 461 Pa. 566, 570 n. 1, 337 A.2d 549, 551 n. 1 (1975).

2. Act of June 23, 1941, P.L. 147 § 1 *et seq.,* 19 P.S. § 622.1 *et seq.*

■■ It is settled that such pre-trial applications for relief are within the discretion of the trial court.[3] *See Commonwealth v. Richardson,* 392 Pa. 528, 140 A.2d 828 (1958). In a criminal case, this Court should look to the nature of the crime and its surrounding circumstances to determine if the denial of a continuance was an abuse of this discretion. *Commonwealth v. Deni,* 317 Pa. 289, 292, 176 A. 919, 921 (1935); *see Commonwealth v. Schurtz,* 337 Pa. 405, 10 A.2d 378 (1940). Neither the surrounding facts nor the nature of the defense's case were so intricate or involved as to warrant a finding of abuse of discretion in this instant case. However, appellant has stressed that the extra time and investigator were required in order to investigate out-of-state witnesses, and that the denials therefore violated due process.

■■ Nonetheless, a motion for a continuance to secure a material witness is still within the confines of the lower court's discretion. *Commonwealth v. Smith,* 442 Pa. 265, 275 A.2d 98 (1971). In *Smith,* this Court set out the criteria to determine the proper exercise of this discretion: (1) the necessity of the witness to strengthen the defendant's case; (2) the essentiality of the witness to defendant's defense; (3) the diligence exercised to procure his presence at trial; (4) the facts to which he could testify; and (5) the likelihood that he could be produced at the next term of court. *Id.* at 270, 275 A.2d at 101. The record reveals that alibi witnesses were produced who testified to the whereabouts of appellant on the night of the crimes. It also appears that there was considerable uncertainty as to both the content and relevance of the testimony of the potential witnesses. Fur-

3. We note that the issuance of a certificate under the Uniform Act is discretionary:
"... a judge of such court *may* issue a certificate. ..." (Emphasis added).
Act of June 23, 1941, P.L. 147 § 3, 19 P.S. § 622.3.

thermore, appellant had sufficient time to investigate and prepare his case prior to trial. He was aware of these potential witnesses prior to trial, in some cases for nine months. Appellant also had the assistance of counsel for four months prior to the trial, although not the counsel who represented him at trial. However, trial counsel was familiar with the case for one month prior to the date. This was not a complicated case. There was no clear showing that the desired witnesses were material, and, even so, appellant had sufficient time to investigate them. For these reasons, we cannot conclude that there was a denial of due process. Therefore, the trial court did not abuse its discretion in denying these motions.

Another violation of due process was alleged in the denial of appellant's applications for a Bill of Particulars and Pre-trial Discovery.[4] This Court has previously held that the denial of pre-trial discovery is not a deprivation of due process. *Commonwealth v. Turra*, 442 Pa. 192, 275 A.2d 96 (1971). In addition, appellant's application failed to set out any showing of exceptional circumstances required by Rule 310 of the Pennsylvania Rules of Criminal Procedure in order to obtain evidence other than defendant's written statements and was properly denied. *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975). A Bill of Particulars application is also addressed to the lower court's discretion. *Commonwealth v. Frye*, 433 Pa. 473, 252 A.2d 580 (1969). Since appellant's application failed to meet the specificity requirements of Rule 221(a) of the Pennsylvania Rules of Criminal Procedure,[5] we cannot conclude

---

4. Appellant also asserted a violation of equal protection in that as a state court defendant he did not have access to the more liberal discovery rules of the federal courts. We find no merit in this claim.

5. Rule 221(a) requires that the request shall contain *inter alia*:
   "(3) The specific particulars sought by the defense; and
   (4) The reasons why the particulars are requested."

▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇

that the lower court abused its discretion in denying this motion.

▇▇▇▇▇▇ Appellant argued that the refusal of his motions for change of venue and change of courtroom was also a violation of due process. These motions are also addressed to the lower court's discretion. *See Commonwealth v. Richardson, supra.* Likewise, the exercise of that discretion will not be disturbed unless it was clearly abused. *Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968). The record reveals that the basis for appellant's venue motion was that he feared reprisal from the victim's relatives. However, upon reading the record, we cannot conclude that the court abused its discretion in denying this motion. As to the change of court motion, because the subsequent trial was by jury, there was no prejudice in the trial court's refusal to step down. *See Commonwealth v. Paquette,* 451 Pa. 250, 258, 301 A.2d 837, 841 (1973).

## II. *Motion to Suppress and Motion to Quash*

Appellant next challenged the denials of his motions to suppress certain evidence and to quash the indictments. Both motions were based upon the same grounds, the allegedly unlawful gathering of evidence in three incidents.[6]

First, appellant argued that a sawed-off shotgun, several shotgun shells, and a revolver box obtained during the search of his car should have been suppressed because the search was in violation of his constitutional rights. The lower court, having found that these items were discovered in plain view during a valid inventory procedure subsequent to appellant's arrest, concluded

---

**6.** The three incidents were: (1) a search of appellant's car by Evansville, Indiana, police officers subsequent to an arrest on an unrelated charge; (2) the questioning by authorities in Belmont County, Ohio, also on unrelated charges; and (3) the identification methods used by Ohio authorities at the extradition hearing and by Harrisburg police at photographic viewings.

that there was no violation of appellant's rights. We agree with that conclusion.

The United States Supreme Court has upheld the use of evidence found during an inventory of an automobile even though it was not in plain view. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In that case, the car had been impounded because of several violations of parking ordinances. The contested evidence was found in the glove compartment as a result of a routine inventory which was conducted pursuant to the standard procedures of the police department. *Id.* at 372, 96 S.Ct. 3092. The Court noted that the police were engaged in a caretaking search of a lawfully impounded vehicle which was free of any pretext of investigatory motives and concluded that, under those circumstances, the conduct of the police was not unreasonable under the constitution. *Id.* at 376, 96 S.Ct. 3092.

In the instant case, the lower court found that it was essential to impound appellant's car after his arrest, that the inventory procedure was standard practice when a car had been impounded, and that the items were discovered in plain view. These findings are supported by the record.[7] The conduct of the police in these circumstances was well within the permissible limits of *Opperman,* and, therefore, appellant's constitutional rights were not violated. *See also Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) and *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

---

7. The record reveals that there was expensive stereo equipment in plain view to the public in the car and that it was parked in a high crime area. The inventory procedure was adopted in order to protect the personal property of the person in custody and to protect the city from lawsuits.

The revolver box was found on the front seat of appellant's car. The shotgun was discovered on the floor under the front seat while an officer was picking up items scattered on the floor. Although some of the shells were found in the glove compartment and others in a suitcase in the back of the car, *Opperman* is obviously broad enough to support their admission.

■ Second, appellant argued that a statement regarding his participation in a robbery in Harrisburg was involuntarily given to the Ohio authorities. The lower court heard this matter pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Our review is limited to the court's conclusions in that we must accept the findings of fact if supported by the evidence. *Commonwealth v. Harmon,* 440 Pa. 195, 269 A.2d 744 (1970); *Commonwealth v. Tabb,* 433 Pa. 204, 249 A.2d 546 (1969). The lower court found that appellant was given all the *Miranda* warnings; that there was no evidence of compulsion, force, or undue persuasion; that appellant initiated the questioning himself by stating that he wished to make a statement; and that the statement was not given out of concern for the comfort of his companion. Since these findings are supported by the record, we cannot find that the court erred in its conclusion that the statement was voluntarily given and appellant's rights were not violated. *Commonwealth v. Sharpe,* 449 Pa. 35, 296 A.2d 519 (1972).

■ In addition to his voluntariness argument, appellant, analogizing to *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), asserted that his statement should have been suppressed because it was a product of unnecessary delay in the appointment of counsel. The *Futch* decision was based upon Rule 118 of the Pennsylvania Rules of Criminal Procedure.[8] The instant case does not present a situation within the parameters of that rule and we will not extend *Futch* to cover these facts.

Third, appellant argued that the identification methods used at both the photographic viewings and the extradition hearing were violative of due process and therefore, the identifications should have been suppress-

8. Now renumbered as Rule 130, the rule provides for preliminary arraignment without unnecessary delay.

ed. Three separate violations were alleged: (1) the photographic viewings were unduly suggestive; (2) subsequent identifications at the extradition hearing were tainted by the prior improper procedures and further undue suggestion; and (3) appellant was not represented by counsel at the photographic viewings.

Initially, we note that the record supports the lower court's findings that there was no evidence of undue suggestion at either the photographic viewings or the extradition hearing. Regardless, it is urged by the Commonwealth that the identifications made during the trial were not based upon these pre-trial identifications but were independent of them. However, to determine if these identifications were independent of any possible improprieties, we should consider the factors set out by the United States Supreme Court:

" . . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of any person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L. Ed.2d 1149 (1967).

*See Commonwealth v. Wilson,* 450 Pa. 296, 301 A.2d 823 (1973). The record reveals the following: (1) the witnesses had between five to ten minutes to observe appellant during this incident in good lighting conditions; (2) at no time did they identify any other person, or fail to identify appellant as the perpetrator of the crimes; (3) the picture identifications were made about one month after the incident; (4) the witnesses stated that they identified appellant not because they had seen his picture but because he was the perpetrator. We conclude that

the identifications were shown by clear and convincing evidence to be independent of any allegedly improper procedures and were, therefore, properly admitted. *Commonwealth v. Richards,* 458 Pa. 455, 467, 327 A.2d 63, 68–69 (1974) and *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970).

We find no merit in appellant's argument that the evidence should have been suppressed because he was not represented by counsel at the viewings. Such representation has been granted only at post-arrest viewings. *Commonwealth v. Whiting, supra; cf. Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974). The viewings in the instant case occurred prior to appellant's arrest on these charges.[9]

For the above reasons, we conclude that the court did not err in denying the motions to suppress evidence and to quash the indictment.

### III. *Trial Errors*

Appellant challenged several of the trial court's rulings on evidentiary questions. He argued that the testimony of one witness was inflammatory and incompetent, that of another exceeded the scope of the offer of proof, and his right to cross-examine two witnesses was unduly restricted. It is well settled that these matters are controlled by the discretion of the trial court and this Court will reverse only for clear abuse of that discretion. *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972) (admission of potentially inflammatory evidence); *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974) (scope of testimony under offer of proof); *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A. 2d 382 (1970) (limitation of cross-examination). Upon

---

**9.** We intend no comment upon the issue of the validity of *Whiting, supra,* in view of *United States v. Ash,* 413 U.S. 300 (1973). *See Commonwealth v. Claitt,* 454 Pa. 313, 311 A.2d 922 (1973) (Pomeroy, J., concurring).

a review of the record, we find that the trial court did not abuse its discretion in any of these rulings.

It was also argued that certain Commonwealth exhibits, *i. e.*, the shotgun, the revolver, and the revolver box, were admitted without any showing of their relevance.[10] The prosecution need not demonstrate that the particular weapon was the weapon used at the crime in order for it to be relevant. *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). A sufficient foundation to support the relevance of the above items was clearly established by the evidence. The record reveals that the weapons introduced were of the type and caliber used during the crimes; these items were found in appellant's possession within three days of the crimes; and, these weapons were identified by the witnesses as those used in the crimes. *See Commonwealth v. Yount*, 455 Pa. 303, 315–17, 314 A.2d 242, 249 (1974).

Appellant asserted that the trial court's rulings during closing arguments were in error. However, the court properly sustained the objection of the Commonwealth that the defense was arguing about exhibits which had not been admitted into evidence. With regard to overruling the defense's objection that the prosecutor stated his personal opinion as to guilt, the trial court noted that the remark was not personal opinion, but rather an argument that the evidence would support a particular verdict. Such an argument is proper and the court did not err. *Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974). Moreover, the court instructed the jury to disregard any personal opinion of the prosecutor.

Finally, appellant alleged error in the denial of his point for charge concerning felony murder. This point was properly rejected since it contained an error of

10. Appellant also argued that the Commonwealth failed to establish a chain of custody of these exhibits. The record does not support this contention and these items were authenticated.

law,[11] and because the subject matter was adequately covered in the other instructions. *Commonwealth v. Chester,* 410 Pa. 45, 54, 188 A.2d 323, 328–29 (1963).

We have reviewed the record and find the evidence sufficient to sustain the verdicts of guilty.

Judgments of sentence affirmed.

ROBERTS, J., concurs in the result.

MANDERINO, J., concurs in the result.

11. The submitted charge read: "You must find as a matter of fact that the shooting of Mrs. Proctor was done as an *intentional* element of the robbery  . . .." (Emphasis added). A killing during a felony does not have to be intentional to rise to felony murder. *See Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A.2d 290 (1972).