J-S63012-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEVON FRYER, | : | |
| | : | |
| Appellant | : | No. 138 EDA 2015 |

Appeal from the Judgment of Sentence December 15, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0001427-2013

BEFORE: DONOHUE, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED NOVEMBER 05, 2015**

Devon Fryer ("Fryer") appeals from the judgment of sentence entered following his convictions of possession of a controlled substance and possession of a controlled substance with intent to deliver.[1] On appeal, Fryer challenges the trial court's denial of his request for a continuance and its limitation of his cross-examination of a Commonwealth witness. Following our review, we affirm.

The trial court summarized the facts underlying Fryer's convictions as follows:

> On January 16th, 2013, at approximately 9:25 p.m., Philadelphia Police Sergeant Tamika Allen set up an undercover surveillance in the 3800 block of Wallace Street in Philadelphia, Pennsylvania. (N.T. 5/20/2014 at 11-12). During the surveillance, she observed [Fryer] sitting on the steps of 3829 Wallace Street.

---

[1] 35 P.S. §§ 780-113(a)(16),(30).

(*Id.* at 12). Approximately [five] minutes later, Sergeant Allen observed Mr. Bradford Clover arrive on the scene and stand on the 600 block of Lowber Street. (*Id.* at 13). Shortly thereafter, [Fryer] walked onto the 600 block of Lowber Street and approached Clover. (*Id.*). After a brief conversation, Clover handed [Fryer] money. (*Id.*). [Fryer] took the money from Clover and walked to 632 North Lowber Street. (*Id.* at 13-14). Sergeant Allen then observed [Fryer] reach down on the side of some steps and retrieve an object. (*Id.* at 14). [Fryer] removed small items from the object and then placed the object back on the ground beside the steps. (*Id.*). [Fryer] then walked back over to Clover and handed him the items he just retrieved from the object by the steps. (*Id.*). After the items were handed to Clover, [Fryer] walked away and sat back down on the steps of 3829 Wallace Street. (*Id.* at 21).

Approximately [five] minutes after the initial transaction, Sergeant Allen observed Ms. Angela Edwards arrive on the scene and stand on the 600 block of Lowber Street. (*Id.* at 22). Shortly thereafter, [Fryer] arose from the steps of 3829 Wallace Street and walked over to Edwards. (*Id.*) Sergeant Allen observed Edwards hand [Fryer] money, (*id.* at 22-23) and [Fryer] walked directly over to 632 North Lowber Street, then retrieved additional items from the object beside the step. (*Id.* at 23). After retrieving the items, Sergeant Allen observed [Fryer] walk back over to Edwards and hand her those items. (*Id.*).

After observing these transactions, Sergeant Allen radioed Philadelphia Police Officer John Merrigan, one of her backup officers, and gave him a description of [Fryer]. (*Id.* at 97). Officer Merrigan observed [Fryer] sitting on the steps of 3829 Wallace Street and arrested him. (*Id.* at 97-98). Incident to the arrest, Officer Merrigan recovered $118.00 in [Fryer's] pants pockets.t. [sic] (*Id.*). Once [Fryer] was in custody, Sergeant Allen directed other officers to the steps on 632 North Lowber Street. (*Id.* at

111). Officer Nicholas Martella recovered a blue Mentos container beside the step, which contained [four] purple packets of crack cocaine. (*Id.*). The substance in the [four] purple packets recovered from the Mentos container [was] later tested and confirmed to be crack cocaine. (*Id.* at 123).

Sergeant Allen also radioed her other backup officers on the scene, Officer Barry Stewart and Officer Justin Falcone, and gave them descriptions of Clover and Edwards. (*Id.* at 66, 84). Officer Stewart apprehended Clover and recovered three purple packets containing crack cocaine from Clover's jacket. (*Id.* at 66-67). Officer Falcone apprehended Edwards and recovered one purple packet containing crack cocaine from her pants pocket. (*Id.* at 86-87). The substance in the purple packets recovered from Clover and Edwards [was] later tested and confirmed to be crack cocaine. (*Id.* at 122-123).

Trial Court Opinion, 5/6/15, at 2-4.

Following a jury trial, Fryer was convicted of the offenses listed above and sentenced to one to three years of incarceration, followed by two years of probation. Fryer sought reconsideration of his sentence. Following a hearing, the trial court resentenced Fryer to eleven and a half to twenty-three months of incarceration, followed by four years of probation. This timely appeal followed.

As noted above, Fryer presents two issues for our review. First, he argues that the trial court denied him "his constitutional right to present a defense when, in the late afternoon on the first day of trial testimony, it denied … [Fryer's] request for a brief continuance until the following morning

to secure attendance of an essential witness[,]" Mr. Hasson.[2]  Fryer's Brief at 14.

"The grant or denial of a continuance to secure a witness is a matter within the sound discretion of the trial court and an appellate court will not reverse a trial court's ruling unless there has been prejudice to the defendant or a showing of palpable and manifest abuse of discretion." **Commonwealth v. Thomas**, 717 A.2d 468, 475-76 (Pa. 1998).  When reviewing a trial court's decision to deny a request for a continuance, we consider the following factors:

> (1) the necessity of the witness to strengthen the defendant's case; (2) the essentiality of the witness to the defendant's defense; (3) the diligence exercised to procure his or her presence at trial; (4) the facts to which he or she could testify; and (5) the likelihood that he or she could be produced in court if a continuance were granted.

**Id.** at 476 (citing **Commonwealth v. Scott**, 365 A.2d 140, 143 (Pa. 1976)).

The trial court denied Fryer's motion because Fryer did not explain "what Mr. Hassan [sic] was expected to testify about or why his testimony was essential to [his] defense[,]" and because Fryer did not state that "if a continuance was granted it was likely that Mr. Hassan [sic] would appear or

---

[2] Mr. Hasson's first name does not appear in the record or in Fryer's brief on appeal.

that the absence of Mr. Hassan's [sic] testimony prejudiced him[.]" Trial Court Opinion, 5/6/15, at 8.

The record reveals that on the first day of trial, the Commonwealth rested and Fryer called his first witness. N.T., 5/20/14, at 126, 133. At the conclusion of that witness' testimony, Fryer informed the court that one of the witnesses that he subpoenaed, Mr. Hasson, was not present and asked for a continuance until the following morning so that he could track down Mr. Hasson. *Id.* at 152-53. The trial court responded, "[I]t's 3:15. I can't let the jury go[,]" to which Fryer said only "I understand, Your Honor. I need to ask for that." *Id.* at 153.

Presently, Fryer argues that the trial court erred because "[w]ithout even inquiring at all into the nature or relevancy of the proposed testimony of Mr. Hasson," it denied his motion. Fryer's Brief at 19. We cannot agree. While a trial court is supposed to consider, *inter alia*, the nature and relevancy of a potential witness' testimony when ruling on a motion for a continuance to secure a witness' presence, **Thomas**, 717 A.2d at 476, it was Fryer's responsibility to argue these matters to the trial court. Fryer had the opportunity to tell the trial court precisely why Mr. Hasson's testimony was relevant and essential to his defense, yet he did not. Instead, he acquiesced to the trial court's inclination to go forward with the trial without attempting to justify his request for a continuance. **See** N.T., 5/20/14, at 153. Fryer is due no relief on this claim.

In his second issue, Fryer argues that the trial court erred by limiting his cross-examination of Sergeant Tamika Allen.

> The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law. An abuse of discretion is not a mere error in judgment, but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

***Commonwealth v. Handfield***, 34 A.3d 187, 210 (Pa. Super. 2011) (citations omitted).

The record reveals that at trial, Fryer sought to question Sergeant Allen on cross-examination about her testimony in other criminal cases as to how she conducted surveillance in those cases for the purpose of attacking her veracity and credibility.[3] Following an objection from the Commonwealth and argument before the trial court, he was prohibited from doing so. N.T., 5/20/14, at 43-50.

We find no abuse of discretion in the trial court's ruling. Pennsylvania Rule of Evidence 608 provides, in relevant part, that "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the

---

[3] Specifically, Fryer argued, "It is my point of view that this is a fabrication[,] that this officer always says [she surveilles from] eighty feet away, always says she's in a confidential location even when she's corrected … . I think that goes to her credibility as far as where she was and what she was able to observe." N.T., 5/20/14, at 47.

witness' conduct[.]" Pa.R.E. 608(b)(1). Yet, this is exactly what Fryer was attempting to do by cross-examining Sergeant Allen as to the substance of her testimony in other drug-related criminal trials, and Fryer admits as much. Fryer's Brief at 22-23. The trial court accurately applied the law in prohibiting this line of cross-examination, and so we find no error in its ruling.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2015