J-A01025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTONIO H. CILINO | |
| Appellant | No. 1026 EDA 2018 |

Appeal from the Judgment of Sentence Entered March 1, 2018
In the Court of Common Pleas of Wayne County
Criminal Division at No: CP-64-CR-0000383-2016

BEFORE: OTT, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 16, 2019**

Appellant, Anthony H. Cilino, appeals from the March 1, 2018 judgment of sentence imposing an aggregate 197 to 408 months of incarceration for third-degree murder, simple assault, and recklessly endangering another person.[1]  We affirm.

For approximately six years leading up to the murder at issue, Appellant and Brooke Swingle were romantically involved and had one child together. N.T. Trial, 1/22/18, at 26.  They broke up in July of 2016. *Id.* at 27.  Shortly thereafter, the victim, Appellant's older brother Joseph Cilino ("Joseph"), became romantically involved with Swingle. *Id.* at 28.  During the summer of 2016, Appellant issued several threats against Swingle and Joseph.  On one

---

[1]  18 Pa.C.S.A. §§ 2502(c), 2701, 2705, respectively.

occasion, a witness overheard Appellant saying, "Can you believe that fucking bitch?  She took the kid and left me.  She took the kid and she left.  I hate that fucking cunt.  I'm going to kill her and whoever she's with.  I don't care who it is I have no fear."  N.T. Trial, 1/23/18, at 37.  On four or five occasions, he said he could kill Joseph and Swingle and get away with it.  *Id.* at 67.  In a text message to a friend, Appellant said he would kill Joseph.  *Id.* at 83.  Swingle, fearful of Appellant's behavior, obtained a temporary Protection From Abuse[2] ("PFA") order against him on August 8, 2016 and a final order on August 12 2016.  Appellant was forbidden any contact with Swingle, other than to exchange custody of their young son, and he was forbidden to possess a firearm.  *Id.* at 228-30.

On the evening of September 2, 2016, Appellant and Swingle completed a custody exchange of their son, Dominick, who was just shy of his second birthday, at a local McDonald's.  N.T. Trial, 1/22/18, at 29.  Appellant was angry during the exchange, and told Swingle if he could not have her no one could.  *Id.* at 31.  Subsequently, Swingle picked up Joseph, who asked her to take him to a gas station.  *Id.* at 32.  On their way, they observed Appellant's pickup truck.  *Id.* at 32-33.  In hope of avoiding Appellant, Swingle turned onto what she believed was a road but was actually a private driveway.  *Id.* at 33.

---

[2]  ***See*** 23 Pa.C.S.A. § 6101 *et. seq*.

According to Swingle, she parked her car alongside the driveway and turned the headlights off, and Joseph went into the woods. *Id.* at 34. Dominick remained in the car with Swingle. *Id.* at 46. Appellant followed Swingle's vehicle, parked behind her, and approached the driver's side door. *Id.* at 34. Appellant attempted to reach through the window, which was a few inches open, and he was tapping on the window with an object in his right hand. *Id.* at 34-35. Joseph then reappeared from the woods, and Appellant turned and shot him with a .22 caliber pistol. *Id.* at 35. Swingle saw the gun at that point. *Id.* at 53. She heard Joseph say, "You shot me." *Id.* at 56. An altercation ensued between Appellant and Joseph, during which Joseph told Swingle to flee. *Id.* at 36. She executed several K-turns, drove away, and contacted police. *Id.* at 36-37. Swingle was sure the shooting preceded the altercation. *Id.* at 40. Later that evening, Swingle received a cell phone call from a number she did not recognize. *Id.* at 41. She recognized Appellant's voice, and he said "How is my brother, did I do a good job?" *Id.* Police found Joseph's body on the porch of the residence at the end of the private driveway. *Id.* at 65-66, 76.

According to Appellant, he was surprised by the location where he observed Swingle's vehicle after the custody exchange. N.T. Trial, 1/23/18, at 195. He decided to follow her because he knew his son was with her. *Id.* at 196-97. Appellant also believed he saw a passenger in the vehicle. *Id.* at 197. Appellant followed Swingle, parked behind her in the private driveway

and saw his brother leave the vehicle and run into the woods. *Id.* at 198-99. Appellant approached the vehicle and knocked on the driver's window, which was fully tinted. *Id.* at 198. Appellant denied tapping the window with his gun, but he admitted bringing a gun with him. *Id.* at 200. Appellant claimed the gun was to protect himself from Joseph, "cause one minute my brother would be fine next minute he would go insane." *Id.* at 200. Appellant testified that he twice asked Swingle, "What the hell is going on?" but she did not respond. *Id.* at 201. Appellant then heard footsteps approaching from behind, and a person grabbed him, lifted him, and spun him to the ground. *Id.* at 202. Appellant pulled the gun but did not have time to fire it. *Id.* at 202-03. During the ensuing altercation, Joseph got on top of Appellant and repeatedly slammed his head into the ground. *Id.* at 204. Joseph was reaching for the gun during the altercation, and eventually it went off. *Id.* at 207-08. Appellant denied pulling the trigger. *Id.* at 209. At some point Joseph sat up and asked Swingle to call 911. *Id.* at 210. Swingle drove away, Joseph looked at Appellant and asked, "Where the fuck is she going?" and Appellant said he did not know. *Id.* at 210. Appellant then ran to his truck and left. *Id.* at 211. Appellant claimed he did not know Joseph sustained a bullet wound until he was at the police station and heard mention of a coroner. *Id.* at 212.

The Commonwealth's evidence indicated that the bullet entered Joseph's chest at a downward angle, and that it was fired from a distance; the

end of the gun barrel was not in close proximity to Joseph when it was fired. N.T. Trial, 1/23/18, at 13. Joseph died from blood loss because the bullet nicked his lung, but because it was a small caliber bullet a "substantial period of time" elapsed between the gunshot wound and Joseph's death. *Id.* at 15. Joseph would have been capable of fighting his brother after sustaining the gunshot wound. *Id.* at 16.

Appellant turned himself in later that evening, telling police that he got into a fight with his brother and shot him. N.T. Trial, 1/22/18, at 59. Specifically, Appellant told the officer he heard his brother approaching from behind and "swung around and fired the weapon." *Id.* at 60.

A public defender represented Appellant until October 20, 2017, at which point private counsel entered an appearance on behalf of Appellant. Thereafter, Appellant filed a request for pretrial discovery on November 7, 2017. On December 13, 2017, Appellant filed a pretrial motion seeking, among other things, appointment of experts to assist in his defense. On January 4, 2018, after a hearing, the trial court entered an order providing $1,500.00 to Appellant to defray the cost of hiring an investigator, but otherwise denied Appellant's pretrial motions. The trial court denied two subsequent defense motions for a continuance. On January 19, 2018, the Commonwealth filed a motion to bar admission into evidence of Joseph's prior convictions. We will address the outcome of that motion in more detail below.

After the jury's guilty verdict, the trial court imposed sentence as set forth above. This timely appeal followed.

Appellant presents ten questions for our review. Appellant's Brief at 4-5. In the first, Appellant asserts that the trial court's errors, "singularly or in combination," require a new trial. Appellant's Brief at 4. Appellant does not develop any argument in his brief in support of this contention, and therefore he cannot obtain relief on this basis. *Commonwealth v. Watkins*, 108 A.3d 692, 735 (Pa. 2014) (noting that an appellant must develop specific argument in support of a claim for relief based on cumulative error), *cert. denied*, *Watkins v. Pennsylvania*, 136 S. Ct. 221 (2015). In any event, as we will explain below, we find no merit in any of the arguments that Appellant has properly preserved and presented for appellate review.

Second, Appellant claims the trial court erred in denying his pre-trial motion for appointment of various experts to assist him with his defense. Appellant's Brief at 4. In particular, Appellant claims the trial court should have appointed a criminal investigator, a presentence investigation expert, a forensic expert, and a firearms expert. Appellant's Brief at 20. Appellant claims he was financially unable to obtain the services of these experts, and that expert help was necessary in order for him to present a reasonable defense. *Id.* at 30. He claims his defense attorney did not "have the expertise in criminal investigation work to properly investigate the facts and witnesses." *Id.* at 33. Appellant argues that a pre-sentence investigation expert was

necessary to enable Appellant to present the trial court with "enough information to ensure that it will make a reasoned determination as to [Appellant's] possible sentence." *Id.* at 33-34. Appellant wanted a forensic expert to examine "flight characteristics and stain patterns of human blood." *Id.* at 34. Finally, Appellant claims he needed a firearms expert to be sufficiently prepared to cross-examine the Commonwealth's witnesses. *Id.*

The only legal support Appellant offers is *Ake v. Oklahoma*, 470 U.S. 68 (1985). Appellant does not explain the Supreme Court's holding in *Ake*, nor does he explain how that decision supports his argument. In *Ake*, the Supreme Court held that where a defendant facing capital charges makes a preliminary showing that his sanity at the time of the murders will be an important issue at trial, the state must provide access to a psychiatrist to assist the defendant, if the defendant cannot afford one on his own. *Id.* at 83. Appellant's sanity was not at issue at trial, and he did not attempt establish that he was indigent. *Ake* is plainly inapposite here.

"The decision to appoint an expert witness is within the sound discretion of the trial court and will not be disturbed except for a clear abuse of that discretion." *Commonwealth v. Carter*, 643 A.2d 61, 73 (Pa. 1994), *cert. denied*, *Carter v. Pennsylvania*, 514 U.S. 1005 (1995). "There is no obligation on the part of the Commonwealth to pay for the eservices of an expert. However, in a capital case, an accused is entitled to the assistance of experts necessary to prepare a defense." *Id.* (citations omitted). In some

cases, however, indigent defendants have the right to have experts appointed. ***Commonwealth v. Rhodes***, 54 A.3d 908, 913 (Pa. Super. 2012) (citing ***Commonwealth v. Cannon***, 954 A.2d 1222, 1225 (Pa. Super. 2008), ***appeal denied***, 964 A.2d 893 (Pa. 2009), and ***Commonwealth v. Curnutte***, 871 A.2d 839 (Pa. Super. 2005)). On the other hand, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." ***Id.*** (quoting ***Cannon***, 954 A.2d at 1225).

This is not a capital case, and, as we have already noted, Appellant has not established that he is indigent. Appellant has done nothing more than request several experts, offering vague explanations of why these experts might have been helpful. Appellant has failed to establish that the trial court abused its discretion in denying his requests. His second argument fails.

Next, Appellant claims the trial court erred in denying his request to have the jury visit the crime scene. Appellant claims, in vague terms, that this "was necessary to impart to the evidence its fair and legitimate weight and the view by the jury would have been crucial to the jury's determination of material, factual issues in this case." Appellant's Brief at 21. The trial court noted that Appellant never explained why he needed to have the jury view the crime scene. Trial Court Opinion, 8/3/18, at 4. Appellant's brief devotes only several paragraphs to this issue, with no citation to pertinent legal authority or to the record. Appellant's Brief at 21-22, 35-36. Failure to support an

argument with pertinent authority and record citation results in waiver. ***Commonwealth v. Janda***, 14 A.3d 147, 164 (Pa. Super. 2011).

Appellant's fourth argument is that the trial court erred in denying several pretrial continuance motions. Appellant's Brief at 4. Appellant explains in general terms that private counsel had insufficient time to prepare for trial, retain an investigator, review the Commonwealth's discovery, and interview witnesses. Appellant's Brief at 21-27, 36-41.

Appellant's legal argument in support of this contention is limited, relying only on Rule 106 of the Rules of Criminal Procedure and several cases without pinpoint citations, analysis, or explanation of any of them. Appellant's Brief at 41-42. Concerning Rule 106, Appellant states that a continuance was necessary in the interests of justice, as per Rule 106(A), and that he filed his motions more than 48 hours before the start of trial, in accord with Rule 106(D). ***See*** Pa.R.Crim.P. 106(A), (D).

"The grant or denial of a continuance to secure a witness is a matter within the sound discretion of the trial court and an appellate court will not reverse a trial court's ruling unless there has been prejudice to the defendant or a showing of palpable and manifest abuse of discretion." ***Commonwealth v. Thomas***, 717 A.2d 468, 476 (Pa. 1998), ***cert. denied***, ***Thomas. v. Pennsylvania***, 528 U.S. 827 (1999). Bald allegations of insufficient preparation time are not sufficient to establish that the trial court abused its discretion in denying a continuance. ***Commonwealth v. Ross***, 57 A.3d 85,

91 (Pa. Super. 2012), *appeal denied*, 72 A.3d 603 (Pa. 2013). Further, "[a]n appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice." *Id.* (quoting *Commonwealth v. Brown*, 505 A.2d 295, 298 (Pa. Super. 1986)).

In *Thomas*, the trial court denied a defense continuance to locate a witness who had gone missing. The *Thomas* Court considered five factors:

(1) the necessity of the witness to strengthen the defendant's case;

(2) the essentiality of the witness to the defendant's defense;

(3) the diligence exercised to procure his or her presence at trial:

(4) the facts to which he or she could testify; and

(5) the likelihood that he or she could be produced in court if a continuance were granted.

*Id.*; *see also Commonwealth v. Birdsong*, 650 A.2d 26, 34 (Pa. 1994) (same); *Commonwealth v. Scott*, 365 A.2d 140, 143 (Pa. 1976) (same); *Commonwealth v. Smith*, 275 A.2d 98, 101 (Pa. Super. 1971)(same). *Thomas*, *Birdsong*, *Scott*, and *Smith* are four of the five cases Appellant cites in support of his argument. All four cases clearly teach that an appellant must articulate specifics as to why the trial court abused its discretion in denying a continuance. Yet Appellant does not even name a witness he believes might have strengthened his case, let alone address the five-prong

analysis set forth above.  Likewise, Appellant does not articulate why the Commonwealth's discovery was inadequate, other than to say that the Commonwealth failed to provide addresses and telephone numbers for the witnesses it intended to call.  On this point, the trial court noted correctly that disclosure of witness addresses and phone numbers is not mandatory under Pa.R.Crim.P. 573.[3]   Trial Court Opinion, 8/3/18, at 6.   Concerning the investigator, we have already explained above that Appellant has failed to establish that he was entitled to have an investigator appointed and paid for by the Commonwealth.

The only other case Appellant cites in support of his argument is **Commonwealth v. Micelli**, 573 A.2d 606 (Pa. Super. 1990), wherein this Court held that the Commonwealth should have been granted a continuance where a police officer witness became unavailable because he was called for National Guard duty.  Appellant's Brief at 41-42.  **Micelli** has no obvious application to this case.

In summary, Appellant offers nothing but bald allegations of inadequate preparation time without any specifics as to what he would have done

---

[3]  Names and addresses of eyewitnesses is discretionary with the court. Pa.R.Crim.P. 573(B)(2)(a)(i); **see also**, **Commonwealth v. Jones**, 668 A.2d 491, 507-08 (Pa. 1995) (noting that the defendant was not entitled to a new trial where the Commonwealth did not disclose names and addresses of witnesses); **cert. denied**, **Jones v. Pennsylvania**, 519 U.S. 826 (1996).

differently. Pursuant to *Ross*, Appellant has failed to establish that the trial court abused its discretion in denying his continuance motions.

Appellant's fifth argument is that the trial court erred in granting the Commonwealth's motion to exclude from evidence any reference to Joseph's prior convictions. Appellant's Brief at 4. Appellant argues, correctly, that the law permits a defendant asserting self-defense in a murder prosecution may introduce evidence of the victim's propensity for violence. ***Commonwealth v. Butterbaugh***, 91 A.3d 1247 (Pa. Super. 2014), ***appeal denied***, 104 A.3d 1 (Pa. 2014).

Appellant's argument is misleading. On January 19, 2018, shortly before commencement of trial, the Commonwealth filed a motion *in limine* regarding Joseph's prior convictions. In that motion, however, the Commonwealth simply asked the trial court to permit Appellant to reference only those prior convictions involving violence. Commonwealth's Motion *in Limine*, 1/19/18, at 1-2 (pagination ours). In the alternative, the Commonwealth argued that two of Appellant's four pertinent convictions were too remote in time to be admitted. ***Id.*** at 2. Finally, the Commonwealth argued in the alternative that none of the victim's crimes of violence were admissible because of factual similarities between the instant matter and ***Commonwealth v. Busanet***, 54 A.3d 35 (Pa. 2012). ***Id.*** at 2-3. The trial court never entered an order disposing of the Commonwealth's motion, and

there was no discussion of it in any pretrial colloquy. At the conclusion of Appellant's testimony, however, the following exchange occurred:

THE COURT: [D]o you have any other evidence?

[DEFENSE COUNSEL]: I'm going to call [a police officer] about the [victim's] criminal history.

[DISTRICT ATTORNEY]: I'll stipulate that he's got himself two convictions.

[DEFENSE COUNSEL]: (indecipherable) We have to tell the jury.

[DISTRICT ATTORNEY]: I'll say it out loud.

[DEFENSE COUNSEL]: (indecipherable)

THE COURT: That's fine with me.

[DISTRICT ATTORNEY]: I'll stipulate to that right now.

THE COURT: Okay.

[DEFENSE COUNSEL]: Thank you.

THE COURT: **And then that will be it?**

[DEFENSE COUNSEL]: **Yeah then I'll just move for the admission of my exhibits.**

N.T. Trial, 1/23/18, at 267 (emphasis added). The stipulation involved a 2014 conviction for terroristic threats and a 2011 conviction for simple assault. *Id.* at 268. The Commonwealth did not stipulate to two other simple assault convictions from 1995 and 2000. Appellant also testified without objection that Joseph "was always in and out of state prison." N.T. Trial, 1/23/18, at 186.

Thus, the trial court never entered an order forbidding Appellant to introduce evidence of Joseph's propensity for violence, and the Commonwealth stipulated to the admission of two of Joseph's prior convictions for crimes of violence. Defense counsel accepted that stipulation and did not argue for anything more. Even if Appellant addressed the admissibility of the 1995 and 2000 convictions in his brief (he does not), we would decline to consider the merits of an issue raised for the first time on appeal. Pa.R.A.P. 302(a). Appellant's fifth argument fails.

For his sixth argument on appeal, Appellant offers a vague claim that the trial court abused its discretion in "rulings as to the admissibility of the testimony of certain witnesses." Appellant's Brief at 5. In several paragraphs, Appellant claims the trial court erred (1) in admitting certain text messages through the testimony of James Warnott; (2) in excluding some testimony of defense witness Laura Reed; and (3) excluding certain testimony of Appellant's and Joseph's mother. Appellant's Brief at 27. Appellant does not elaborate on the substance of text messages or the excluded testimony. Appellant simply claims, without citation to any pertinent legal authority, that the trial court abused its discretion. Appellant's Brief at 51-52. Appellant's failure to develop any legal argument results in waiver. ***Janda***, 14 A.3d at 164.

In his seventh argument, Appellant claims the trial court erred in admitting evidence that Swingle obtained a PFA order against him. Appellant's

Brief at 5.  Appellant cites Rules of Criminal Procedure 404(b) and 573, and claims the Commonwealth's motion was untimely.  Appellant's Brief at 53. Appellant fails, however, to develop any substantive argument as to why the PFA was inadmissible.  Appellant's Brief at 28, 52-54.  He therefore cannot obtain relief on this issue.  *Janda*, 14 A.3d at 164.  In any event, the record reveals that the trial court reserved ruling on the Commonwealth's pretrial motion to admit evidence of the PFA, and did not permit the Commonwealth to introduce the PFA evidence until Appellant opened the door, through his own testimony, by denying any abusive behavior toward Swingle.  N.T. Trial, 1/23/18, at 226-28.  Appellant's brief does not challenge the trial court's conclusion that he opened the door to the PFA evidence.

Appellant's eighth argument is that the trial court erred in admitting several color, post-mortem pictures of Joseph's body.  Appellant's Brief at 5. Appellant devotes only two paragraphs to this argument, without any citation to pertinent authority.  Appellant's Brief at 28-29, 54.  This results in waiver. *Janda*, 14 A.3d at 164.  In any event, the trial court explained that, in response to Appellant's motion, it excluded pictures of Joseph's head but admitted pictures depicting the fatal gunshot wound to Joseph's chest.  Trial Court Opinion, 8/3/18, at 18-19.

For his ninth argument, Appellant claims the trial court erred in rejecting Appellant's proposed jury instructions.  Appellant's Brief at 5.  The record reveals that Appellant submitted written proposed jury instructions at the

close of trial in accord with Pa.R.Crim.P. 647(B). One of Appellant's proposed charges addressed voluntary manslaughter. In his brief, Appellant claims the trial court erred in declining to use Appellant's proposed language for his voluntary manslaughter/heat of passion charge. Appellant's Brief at 55-56.

We are mindful of the following legal precepts:

> A trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. In reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, in order to ascertain whether the instruction fairly conveys the legal principles at issue. [A jury] instruction will be upheld if it clearly, adequately and accurately reflects the law.

***Commonwealth v. Davis***, 861 A.2d 310, 323 (Pa. Super. 2004), ***appeal denied***, 872 A.2d 171 (Pa. 2005).

The record reveals that the trial court did, in fact, instruct the jury on voluntary manslaughter. N.T. Trial, 1/24/18, at 78-81. Appellant does not explain why he believes the trial court's language was insufficient. The trial court explained that it chose to rely on the standard jury instruction instead of Appellant's proposed language. Trial Court Opinion, 8/3/18, at 20. Moreover, the following exchange occurred between the trial court and defense counsel just before the jury charge:

> [T]he instructions of the defense are set forth on a 12 page Motion for Binding Instructions and Defendant's Request for Instructions filed on January 22, 2018. The court's reviewed, the subject matters are all covered by the standard charges. [Defense

- 16 -

Counsel], you asked for a lot of, um, a lot of additional language based upon cases that were decided. **The court finds that the standard instructions that the court intends to give are sufficient to cover these areas. Do you disagree with that?**

[DEFENSE COUNSEL]: **That's fine, Your Honor.**

N.T. Trial, 1/24/18, at 7 (emphasis added). In summary, Appellant failed to preserve this issue before the trial court, and his brief to this Court fails to explain any deficiency in the trial court's chosen language. Appellant's ninth argument lacks merit.

Finally, Appellant argues the trial court abused its sentencing discretion. Appellant's Brief at 5. Appellant devotes only two paragraphs to this argument with no citation to legal authority. Appellant's Brief at 29, 57. We conclude he has waived his challenge to the discretionary aspects of his sentence. *Janda*, 14 A.3d at 164.

In summary, we have concluded that all of Appellant's issues are lacking in merit or not preserved for appellate review. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/19