439 A.2d 145

COMMONWEALTH of Pennsylvania

v.

**Nick FOLINO, Appellant.**

COMMONWEALTH of Pennsylvania

v.

**Theodies HOPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Dec. 18, 1981.

Petition for Allowance of Appeal Denied April 2, 1982.

Lester G. Nauhaus, Public Defender, Pittsburgh, for appellants.

Leo M. Dillon, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellants are co-defendants. Appellant Folino, by Information No. CC7607095A was charged with Criminal Conspiracy, Simple Assault, Rape, and Corruption of Minors. Appellant Hopson, by Information No. CC7607096A was charged with Criminal Conspiracy, Simple Assault, Kidnapping, two (2) counts of Rape, and Corruption of Minors. Appellants proceeded to trial jointly. At the first trial, a mistrial was granted on motion of defense counsel. Appellants again proceeded jointly to trial for a second time. A jury found Folino guilty of rape and corruption of minors; he was acquitted of the other charges. Hopson was adjudged guilty of simple assault, one (1) count of rape, and corruption of minors; he was acquitted of the other charges. Post verdict motions were denied. Both appellants were sentenced to a term of five (5) to ten (10) years imprisonment on the rape convictions, sentences were suspended on the other convictions. Both appellants have appealed to this Court; their appeals have been consolidated for our review.

A brief summary of the factual history of this case is helpful. Virginia, age fourteen (14) and Andrea, age fifteen (15) ran away from their home in McKeesport. The two girls made their way to Point Park in Pittsburgh, where they were approached by appellant Folino. After buying the girls something to eat, and after Folino made several phone calls, the three walked to the North Side. On the North Side, the girls were forced into a car driven by Hopson. A third male was picked up and the girls were driven to a house where they were raped. The group then drove to the downtown area where Andrea was able to escape. Virginia was taken to another apartment by the two appellants, where she remained until escaping five days later.

A separate brief has been filed by counsel for each appellant. These briefs each raise four arguments, each argument will be discussed jointly in part A, as the briefs are basically identical for review purposes. Additionally, appellant Hopson has filed a brief pro se. While the Common-

wealth does not address itself to the pro se brief, we must nonetheless review its contents. We shall first consider the attorney filed briefs and then discuss the pro se arguments in part B.

## A

I.  Did the court err in permitting Andrea to be removed from the witness stand for rehabilitation by a rape crisis center representative?

During the direct examination of Andrea, the witness appeared to be having difficulty in relating the incident to the court and jury. The trial judge asked the prosecuting attorney whether he wished to talk with the witness before continuing. The assistant district attorney conferred with the witness for about four minutes [1] outside of the court room. During this four minute interval a rape crisis center counselor talked with the witness. The witness then took the stand and continued with her testimony. Appellant claims this procedure was improper.

We need not discuss the merits of such contention since appellant has not properly preserved it for review. Neither appellant objected at that time to the court's excusing the witness for those four minutes. Counsel for appellant Folino completed his cross examination without ever questioning the four minute conference. Counsel for Hopson, after the co-defendant had concluded his cross examination, and after a brief recess then moved for a mistrial, which the court denied. Counsel for Hopson then went on to cross examine the witness. Cross examination revealed the witness had talked with the volunteer from the Rape Crisis Center. Appellant Hopson did not renew his motion for a mistrial.

Case law in this jurisdiction has consistently held that the cornerstone of our waiver doctrine is that issues below not raised in a timely manner are foreclosed for purposes of appellate review. *Commonwealth v. Pritchett*, 468 Pa. 10,

---

1. N.T. 12/15/76, p. 118. Testimony later indicated eight minutes elapsed.

359 A.2d 786 (1976). In the vast majority of cases, the rubric "in a timely manner" requires contemporaneous objection; and our rules and cases rigorously enforce the contemporaneous objection rule. See, e.g., *Commonwealth v. Chuck*, 227 Pa. Superior Ct. 612, 323 A.2d 123 (1974); Pa.R.Crim.P. 1119(b); Pa.R.A.P. 302.

*Commonwealth v. Griffin*, 271 Pa.Superior Ct. 228, 412 A.2d 897 (1980).

Neither appellant objected to the Commonwealth's mid-examination conference with the victim until well after such conference. Nor can the appellants claim that their objection goes to the involvement of the Rape Crisis Center. No objection was made when appellants became aware that the witness may have conversed with someone other than the district attorney. Accordingly, we may not review this claim as appellants have failed to preserve it with a timely objection.

II. Did the court become an advocate for the Commonwealth by examining a prosecution witness and refusing to permit defense counsel to further cross examine such witness?

After the Commonwealth and both appellants had completed their questioning of Andrea (including re-direct and re-cross), the trial judge proceeded to ask the witness several questions. The court inquired as to whether the witness was afraid to testify. The court then succinctly questioned the witness concerning the criminal incident.

Q   As I understand your statement, you say you have been—you had sexual intercourse with both of these Defendants on that day?

A   Yes.

Q   And it was against your will?

A   Yes.

Q   And it took place in that building over on the Northside?

A   Yes.

Q   All right.   Now, looking at both of these Defendants, are they the individuals who were with you on that day?

A   Yes.

Q   Is there any doubt in your mind that they are the individuals who were with you in that building on the Northside, where you say you were, where you had sexual intercourse with them against your will?

A   Those are the two guys.

Q   These are the two individuals?

A   Yes.

(N.T. pp. 185–86)

The court also delved into the short conference with the Rape Crisis Center volunteer.   The court would not permit trial counsel for appellant Folino to further cross examine the witness.   Appellants claim the court erred both in questioning the witness and in denying cross examination.

A trial judge must be ever cautious that his questioning of witnesses not show bias or a belief in the credibility of particular witnesses. *Commonwealth v. Miller*, 442 Pa. 95, 275 A.2d 328 (1971).   However, a trial judge has the inherent right, and, at times, the duty to question witnesses to clarify existing facts and to elicit new information. *Commonwealth v. Brown*, 438 Pa. 52, 63, 265 A.2d 101 (1970).   Where these are the objectives of the questioning and it is not unduly protracted or conducted in a biased manner, the trial judge's discretion in questioning witnesses will not be found erroneous. *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963).

*Commonwealth v. Lanza*, 228 Pa.Superior Ct. 300, 303, 323 A.2d 178 (1974).

In the current case, after protracted direct examination, cross examination, redirect, and recross examination, the trial court consumed two pages of testimony.   As noted previously, the witness had difficulty in clearly responding to the questions put to her.   In this circumstance it was proper for the court to question her. *Commonwealth v. Smith*, 227 Pa.Superior Ct. 355, 324 A.2d 483 (1974).   Nor, was the court's inquiry into the witness' difficulty in testify-

ing improper even though she indicated she had been threatened. Apparently such response was unexpected. See: *Commonwealth v. Hodge*, 246 Pa.Superior Ct. 71, 369 A.2d 815 (1977). Furthermore, appellants did not object at that time. See *Commonwealth v. Parks*, 273 Pa.Superior Ct. 506, 417 A.2d 1163 (1979). The record shows no bias, hostility, or unfairness in the court's questioning.

■ Nor do we find that the court improperly restricted cross examination. The scope of cross examination is within the discretion of the trial court and the court's decision will not be reversed absent an abuse of discretion. *Commonwealth v. Britton*, 251 Pa.Superior Ct. 335, 380 A.2d 807 (1977). We find no abuse here. The substance of the questioning had already been covered on direct, cross, redirect and recross examination and both appellants had a chance at those times to examine the witness.

III. Did the lower court improperly deny appellants' requests for review of the jury selection process without any consideration of the merits of such request?

■ Appellant for the first time raised mid-way through the jury selection a claim of exclusion of blacks from the jury. Appellant Hopson apparently became somewhat of a disruptive influence during the selection. The Commonwealth and both appellants accompanied by counsel proceeded in front of Judge Ziegler who was apparently motion judge on the day in question.

THE COURT: The first issue is whether or not he's entitled to be tried before jurors of his own race.

THE DEFENDANT HOPSON: Yeah. Could I have one black on my jury? That's all I ask, at least one.

THE COURT: There's a number of blacks up there.

THE DEFENDANT HOPSON: There's only two. There's five hundred white people up there, and there's only two.

THE COURT: I'm not going to argue with you. Put on the record whatever contentions he has in regard to the selection of the jury, and if it's turned down, then you can litigate the matter in the appellate court.

(N.T. 12/14/76, pp. 8–9)

The issue was raised a second time on the day of trial after the jury had been sworn in.

COUNSEL FOR HOPSON:

Your Honor, two points were raised preliminarily yesterday at the hearing in front of Judge Ziegler, in the middle of the Jury selection process. At that time Mr. Hopson complained to me that he felt that he was not getting a fair panel. And on behalf of Mr. Hopson, and in order to make a record in this case, I would move that this Jury be dismissed on the basis of the fact that of the sixty people empanelled for this Jury only one was black, and the one black woman was the object of a peremptory challenge on the part of the Commonwealth. I would say that, on behalf of Mr. Hopson, this is clearly a violation of his rights under the Fifth and the Fourteenth Amendments, and he is being denied a fair trial by a Jury of his peers.

(N.T. 12/15/76, p. 5)

The motion was denied.

Contrary to appellant's claim here, appellant Hopson's complaint as voiced to the lower court did not go to the selection process but to the particular panel of jurors he encountered in his case. Such a complaint does not constitute grounds for a challenge. *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976).[2]

IV. Did the trial court err in not allowing testimony which tended to impeach the alleged victims' testimony by demonstrating that they had been and subsequently were engaging in a continuing course of immoral conduct?

It is appellants' contention that they should have been permitted to introduce evidence that the victims had ap-

---

2. Furthermore, appellant failed to file a timely written motion challenging the array as required by Rule 1104 Pa.R.Crim.P. Accordingly, any challenge should have been denied as untimely. *Commonwealth v. Adams*, 476 Pa. 91, 381 A.2d 882 (1977).

proached another man prior to approaching Folino, and offered to engage in sex with him. They also claim that the court erred in prohibiting the use of testimony relating to Virginia's subsequent conduct. The lower court found such proffered evidence irrelevant and prohibited by the Rape Shield Law, 18 Pa.C.S. § 3104.[3]

■ Appellants attempt to remove the alleged prior solicitation from the scope of the act by offering such evidence to show a continuing course of conduct and by limiting its application to the corruption of minors charge. We are not persuaded. In *Commonwealth v. Duncan*, 279 Pa.Superior Ct. 395, 421 A.2d 257 (1980), the appellant attempted to have evidence admitted of prior sexual conduct to demonstrate bias of the prosecutrix. There this court found the law to be an absolute bar to the admission of such testimony for any purpose, unless such conduct was with the defendant. We hold that the Rape Shield Law is applicable to all prosecutions for sexual offenses set forth in Chapter 31 of the Crimes Code and also as in the instant appeal to the charge of corruption of a minor when it involves the raping of said minor. The proffered evidence was inadmissible as the trial judge correctly so held.

■ Appellants also wished to show that a week after the incident, Virginia again ran away. They claim she gave

3. § 3104. Evidence of victim's sexual conduct
    (a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
    (b) Evidentiary proceedings.—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).
    As amended 1976, May 18, P.L. 120, No. 53, § 1, effective in 30 days.

false statements to a police officer and stated she was "living with" a truck driver. This, appellants claim would demonstrate a continuing plan to engage in sex as a means of support. We disagree, such evidence is irrelevant. In *Commonwealth v. Jenkins*, 442 Pa. 588, 277 A.2d 356 (1971) the Commonwealth introduced evidence of a subsequent arrest. The prosecution argued that such evidence was relevant to: show appellant was still in possession of the weapon he had used previously; contradict appellant's contention that he thought the gun was empty; and to show appellant was consistently reckless with guns. The Supreme Court held that the second arrest had no relation to the first occurrence. Similarly, here Virginia's statement that she was living with a truck driver has no relationship to the criminal episode of a week earlier.

### B

Appellant Hopson raises four claims of error in his pro se brief.

I. Hopson claims he was deprived of due process of law by not having a prompt preliminary arraignment. This assignment of error was not raised in either pretrial or post-trial motions and therefore has been waived. Since the lower court has not had an opportunity to consider such a complaint we may not either. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

II. The second assignment of error, the legality of the arrest, was first raised orally during the suppression hearing (N.T. Suppression, p. 32). The court granted appellant permission to amend his application to suppress to include the legality of the arrest. Hopson's specific complaint is that the police were without probable cause to arrest him.

An arrest warrant for appellant Hopson was obtained on the basis of the physical description given by the victims, the name of "Tony" on the original police report and the

description of his automobile.[4]  We find, as the lower court did, that probable cause did exist to sustain the arrest.

III.  Appellant's third claim was the subject of a suppression hearing and was preserved by way of the written post-trial motions.  Hopson argues that the pre-hearing, post-arrest uncounseled photo-array was improper.  He then argues that any subsequent identifications at the preliminary hearing or at trial are therefore tainted.  A careful reading of the notes of testimony of the suppression hearing establishes the following.  The police, after determining to their satisfaction that appellant Hopson was likely involved in the criminal incident, attempted to determine who the other participants were.  The police compiled a photographic array for the purpose of obtaining a description of the two other actors.  Inadvertently a picture of Hopson had been included in the array.  Both victims immediately identified Hopson.

■ We find that the lower court did not err in denying the motion to suppress the in-court identification.  Even assuming the photo-array was improper,[5] we believe any later identification was free of any taint and had an independent basis.  The victims had spent an extended period of time in the company of both appellants, some of which was in daylight and some face to face.  We find that the victims had ample opportunity to observe appellant and any in-court identification was based on such and not on the array.  See *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976).[6]

4. The victims described the vehicle as a white Cadillac, with a white roof and interior.  The car was described as having white fur around the steering wheel and blue fur around the rear-view mirror.  The automobile supposedly had "T–O–N–Y" on a front plate.  Hopson's car matches this description.

5. Co-appellant Folino had been described as a light complected negro or a dark complected caucasian.  Hopson is a dark complected negro; his picture was the only such picture in the array.

6. As we find an independent basis existed, we need not decide whether a defendant has a right to counsel at a post-arrest photographic array.  See generally, *Commonwealth v. Harvey*, 231 Pa.Superior Ct. 86, 331 A.2d 915 (1974).

IV. Hopson's final contention is a challenge to his attorney's effectiveness. He contends that he informed counsel that on the initial day in question he was visiting an elderly lady. Furthermore, he alleges that during the subsequent six days he visited a clinic and a dry cleaning establishment. He claims that trial counsel did not investigate or present evidence on such claims.

Appellant was represented at trial and on this appeal by the public defender. Since his pro se brief raises the issue of ineffective trial counsel, *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978), it requires us to remand for the appointment of new counsel. Alternatively, on remand appellant may choose to retain appellate counsel provided he is informed of the dangers of proceeding with counsel from the same office as trial counsel. If appellant then wishes to continue to pursue his claim of ineffectiveness, we direct the lower court to conduct an evidentiary hearing on the matter.

*Commonwealth v. Folino*, No. 643 April Term, 1977 is affirmed. *Commonwealth v. Hopson*, No. 644 April Term, 1977 is affirmed in part and remanded in part.