J-S80036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISHMAIL MYRICK, | : | |
| | : | |
| Appellant | : | No. 1546 EDA 2016 |

Appeal from the Judgment of Sentence January 7, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0001147-2014

BEFORE: BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 28, 2018**

Ishmail Myrick ("Myrick") appeals from the judgment of sentence imposed following his conviction of aggravated assault, possession of a firearm prohibited, carrying a firearm without a license, carrying a firearm on public streets, possession of an instrument of crime, and recklessly endangering another person.[1] We affirm.

In its Opinion, the trial court set forth the relevant factual background as follows:

The complainant, Nelson Suah [("Suah")], testified that[,] on the morning of January 2, 2014, at approximately 9:10 a.m., he was walking past the corner of 66th Street and Allman Street in the city of Philadelphia, when he was flagged over to a purple minivan driven by [Myrick]. After getting in the minivan,

_____

[1] **See** 18 Pa.C.S.A. §§ 2702(a), 6105(a)(1), 6101(a)(1), 6108, 907(a), 2705.

[Myrick] asked [Suah] to resume selling drugs for him. (N.T. [Trial], 11/4/15, [at] 19)[.] When [Suah] refused, [Myrick] climbed into the back of the minivan, retrieved a silver revolver and returned to the front[,] striking [Suah[2]] in the face. During a brief struggle[,] Suah was able to unlock the door of the vehicle and both men fell out. [Suah] then pushed [Myrick] to the ground and fled from the scene. As [Suah] was running[,] he heard shots being fired and looked back to see [Myrick] pointing the gun into the air. ([*Id*. at] 20). As a result of the struggle, [Suah] suffered a laceration to his face.

[] Michelle Johnson ("Johnson") testified that on the morning of the shooting[,] she was in her office at Joseph W. Catherine Elementary School. At approximately 9:00 a.m. that morning[,] on hearing what she believed to be gun shots, she looked out her window on to 66th Street and saw a "gentleman" shooting another "gentleman." She then witnessed one of the men running up the street away from the other man. (N.T. [Trial], 11/3/15, at 74-76, 88)[.] [Johnson then saw the shooter, who was wearing a "black hoodie," get back into the driver's side of a dark van. *Id*. at 91, 94. Johnson and the school cook recorded the van's license plate, and provided that information to police. *Id*. at 90-91, 93.]

Philadelphia Police Officer Robin Song [("Officer Song")] testified that she took a statement from [Suah] the morning of the shooting. [Suah] identified [Myrick] as his assailant[,] and provided Officer Song with a physical description of [Myrick]. ([*Id*. at] 124-[]26)[.]

Trial Court Opinion, 11/23/16, at 3-4 (footnote added).

Shortly after the shooting, police located a purple minivan with a license plate matching the information provided by Johnson and the school

---

[2] In its recitation, the trial court inadvertently related that Suah testified that Myrick had struck "defendant" in the face with the revolver. *See* Trial Court Opinion, 11/23/16, at 3. However, the record makes clear that Suah testified that Myrick struck Suah in the face with the revolver.

cook.[3]  Pursuant to a warrant, police searched the minivan and located two black hooded sweatshirts.  **See** N.T. (Trial), 11/4/15, at 116.  One of the sweatshirts later tested positive for gunshot residue, and Suah's blood on the back of the left cuff.  **See id**. at 178-81.  Police also found blood on the passenger seat of the minivan, which was determined to be Suah's blood.  **See id**. at 182.

On January 3, 2014, Myrick was arrested and charged with the above-described offenses.  While in custody and awaiting trial, Myrick used another inmate's phone account to call Suah eighty-five times.  A jury trial commenced on November 2, 2015, and concluded on November 5, 2015.  During the course of trial, defense counsel made motions for a mistrial and recusal.  At the conclusion of trial, a jury found Myrick guilty of aggravated assault, carrying a firearm without a license, carrying a firearm on public streets, possession of an instrument of crime, and recklessly endangering another person.  After the jury's verdict, the trial court found Myrick guilty of possession of a firearm prohibited.  On January 7, 2016, the trial court sentenced Myrick to consecutive prison terms of 8 to 16 years for aggravated assault; 3 to 10 years for possession of firearm prohibited; 2 to 5 years for carrying a firearm without a license; 1 to 5 years for carrying a

---

[3] A few days prior to the shooting, Myrick had been driving the purple minivan in question when he was pulled over by police because the minivan did not have rear brake lights.  **See** N.T. (Trial), 11/3/15, at 110-16; **see also** N.T. (Trial), 11/4/15, at 104.

firearm in public; 2 to 5 years for possession of an instrument of crime; and 1 to 2 years for reckless endangerment, for an aggregate prison sentence of 17 to 43 years.

On May 16, 2016, Myrick filed a timely Notice of Appeal.[4] Thereafter, Myrick filed a timely court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Myrick raises the following questions for our review:

1    Whether the trial court abused its discretion in imposing a manifestly excessive sentence, which stemmed from the trial court's complete disregard of [Myrick's] mental condition as a mitigating factor, [Myrick's] rehabilitative needs and improper consideration of [Myrick's] prior sexual assault case, which was clearly an impermissible factor to be considered at [Myrick's] sentencing hearing?

2    Whether the jury's verdict, finding [Myrick] guilty of aggravated assault, carrying a firearm without a license, carrying a firearm on public streets, possessing an instrument of crime, and recklessly endangering another person was against the weight of the evidence?

3    Whether the trial court abused its discretion in denying [Myrick's] [M]otions for recusal and mistrial, where the trial court demonstrated manifest bias by cross-examining witnesses in a manner clearly intended to undermine testimony proffered by those witnesses which was

_____

[4] On January 14, 2016, Myrick timely filed a post-sentence Motion. Myrick filed his Notice of Appeal on May 16, 2014, prior to the trial court's ruling on the Motion. The trial court entered an Order on May 17, 2016, denying Myrick's Motion by operation of law. We consider Myrick's Notice of Appeal as timely filed in response to the trial court's Order. *See* Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

- 4 -

favorable for [Myrick] and thereby bolster the Commonwealth['s] case, and the trial court repeatedly threatened, insulted and demeaned [Myrick's] trial counsel?

Brief for Appellant at 6 (some capitalization omitted).

In his first issue, Myrick contends that the trial court abused its discretion by imposing a manifestly excessive sentence. *Id*. at 29. Myrick challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

Prior to reaching the merits of a discretionary sentencing issue,

[this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the

sentencing code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Sierra***, 752 A.2d 910, 912-13 (Pa. Super. 2010).

In the instant case, Myrick filed a timely Notice of Appeal and preserved his claims in a timely post-sentence Motion. Although Myrick included in his appellate brief a separate Rule 2119(f) Statement, the Statement consists only of one paragraph:

> []The trial court imposed a manifestly excessive sentence by: (1) failing to consider the mitigating factor of [Myrick's] mental state; (2) relying on impermissible factors; and (3) failing to consider [Myrick's] rehabilitative needs, which violated the fundamental norms of sentencing and the Pennsylvania Sentencing Code.

Brief for Appellant at 29 (capitalization omitted). The Commonwealth has objected to the Statement on the basis that Myrick "did not specify what provision of the Sentencing Code was supposedly violated, nor did he recite how his sentences relate to the guidelines …." Commonwealth's Brief at 10.

> The Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.*, the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range).

***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000). A failure by an appellant to articulate a sufficient Rule 2119(f) statement along

with an objection from the Commonwealth will result in this Court's preclusion from considering the issue. *See Commonwealth v. Karns*, 50 A.3d 158, 166 (Pa. Super. 2012); *see also Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa. Super. 2013) (disapproving of the appellant's failure to indicate where his sentences fell in the sentencing guidelines, and what provision of the Sentencing Code was violated); *Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa. Super. 2005) (concluding that the appellant failed to raise a substantial question as to his claim of inadequate consideration of mitigating factors, where he did not explain in his Rule 2119(f) statement what specific provision of the sentencing code or fundamental norm underlying the sentencing process had been violated).

In his Rule 2119(f) Statement, Myrick does not identify which of the six sentences imposed he is challenging. Moreover, Myrick does not allege that any of his sentences are in the aggravated range of the sentencing guidelines, or outside of the statutory maximum sentence. Nor does Myrick point to any specific provision of the Sentencing Code that the trial court ostensibly violated in imposing the sentences. Further, while Myrick states that the trial court considered impermissible factors when sentencing him, Myrick fails to identify any of those factors. Finally, Myrick's claim that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. *See Commonwealth v. Haynes*, 125 A.3d 800, 807 (Pa. Super. 2015)

(stating that this Court has held on numerous occasions that a claim of inadequate consideration of mental health issues and rehabilitative needs does not raise a substantial question for our review). Accordingly, we decline to address Myrick's challenge to the discretionary aspects of his sentence.[5]

In his second issue, Myrick contends that his convictions were against the weight of the evidence. Brief for Appellant at 38. Myrick asserts that Suah "gave vacillating and contradictory accounts of the incident through the course of the case …." *Id*. at 39. Myrick claims that whereas Suah initially told police that Myrick had pistol-whipped Suah with a gun and then shot at him as he ran to safety, Suah testified at trial that he did not see a gun or see Myrick shoot in Suah's direction. *Id*. Myrick argues that Suah's testimony was not credible because he was in jail at the time of Myrick's trial, pending criminal charges in another case. *Id*. Myrick also asserts that the Commonwealth's sole eyewitness, Johnson, provided conflicting accounts of the incident. *Id*. Myrick claims that, whereas Johnson initially told police that she had witnessed the shooting, saw the shooter run to a Grand Voyager minivan, and provided police with a physical description of the shooter; at trial she testified that she did not witness the shooting or provide

_____

[5] Even if Myrick had preserved his first issue for our review, we would have concluded that the issue lacks merit for the reasons expressed by the trial court in its Opinion. *See* Trial Court Opinion, 11/23/16, at 10-14.

police with a physical description of the shooter, and did not recognize Myrick as the shooter. *Id*. at 39-40.

Myrick additionally claims that there is no credible physical evidence to support his convictions, such as the firearm used in the shooting, bullet marks, strike marks or DNA evidence. *Id*. at 40. While Myrick concedes that he was pulled over by police while driving the Grand Voyager minivan a few days before the shooting incident, he claims that this fact does not establish that he was driving the minivan on the day of the shooting, noting that the minivan was registered to another individual. *Id*. Myrick further argues that, although jackets recovered from the Grand Voyager minivan had gunpowder residue on them, there was no gunpowder residue found on Myrick, who was arrested within an hour of the incident. *Id*. Finally, Myrick contends that the "prison calls don't establish [his] culpability, but if anything[,] establish that [he] and [] Suah actually had a cordial relationship." *Id*. at 40-41.

Notably, in his Concise Statement, Myrick framed his second issue somewhat differently, asserting that his convictions were against the weight of the evidence because "no firearm was recovered during the course of investigation and ballistics evidence, consistent with a shooting, were not recovered by police investigators, at the purported crime scene." Concise Statement, 5/21/16, at 1-2 (unnumbered). Based on the narrow wording of Myrick's second issue in his Concise Statement, the trial court tailored its

analysis of Myrick's weight of the evidence claim to address the absence of a firearm or ballistics evidence. *See* Trial Court Opinion, 11/23/16, at 4-7. Accordingly, we deem any further arguments raised by Myrick in his appellate brief waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived).

Turning to Myrick's preserved weight claim,

[t]he law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, Myrick essentially asks us to reassess the credibility of the eyewitnesses and reweigh the testimony and evidence presented at trial. We cannot, and will not, do so. It was for the jury, as the finder of fact, to

determine the credibility of the witnesses. **See Gonzalez**, **supra**. After weighing all of the evidence presented at trial, the jury found Myrick guilty of the subject offenses. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. We therefore conclude that the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. Accordingly, Myrick is not entitled to relief on his weight claim.

In his third issue, Myrick contends that the trial court abused its discretion by denying Myrick's Motion for recusal and mistrial. **See** Brief for Appellant at 41-53. Myrick first asserts that the trial court exhibited bias when cross-examining witnesses. **Id**. at 43-45. Myrick claims that, when Suah initially testified that he did not see a firearm in Myrick's hand, the trial court improperly

> clarified for [] Suah with a leading question, by asking [] Suah didn't he mean that he didn't see a firearm in [Myrick's] hand when shots were being fired, but did see [] the .357 Magnum in [Myrick's] hand when [Myrick] pistol[-]whipped [Suah] inside the van, which [] Suah responded in the affirmative.

**Id**. at 43-44 (referencing N.T. (Trial), 11/4/15, at 65, 66, 67. 68, 69).

Myrick also points to Johnson's inconsistent testimony, and asserts that the trial court "cross[-]examined [her] about her answer to [Officer Song] regarding her job title, during which the trial court asked [her] 'why she was having trouble remembering whether she told the truth.'" Brief for

- 11 -

Appellant at 44-45 (referencing N.T. (Trial), 11/3/15, at 82, 83, 84, 85).

Myrick claims that the trial court improperly threatened Johnson with perjury

if she recanted her post-incident statement to police. *Id*.

Next, Myrick contends that the trial court repeatedly insulted and

taunted defense counsel. Brief for Appellant at 45. According to Myrick,

when defense counsel objected to the Commonwealth's summary of the

facts from Myrick's prior attempted rape case, the trial judge exhibited bias

when he asked counsel if he was contesting the accuracy of the summary:

> The Court: This is really a simple question. If you can't answer it[,] I'll ask someone in the audience to answer it for me. I'm sure everybody here understands this question. I hope you do too. Are you contesting the accuracy of the summary[?]"
>
> Defense Counsel: From the standpoint that we don't have the actual Affidavit of Probable Cause, yes.

*Id*. at 45-46 (citing N.T. (Sentencing), 1/7/16, at 15). Myrick asserts that

the trial judge also exhibited bias when he did not permit defense counsel to

summarize a mental health report regarding Myrick, despite having

permitted the Commonwealth to summarize the Affidavit of Probable Cause.

Brief for Appellant at 46-47 (citing N.T. (Sentencing), 1/7/16, at 29-30).

Myrick claims that the trial court further exhibited bias when defense counsel

arrived late to the courtroom on the second day of trial. Brief for Appellant

at 47. According to Myrick, the trial judge had instructed counsel to keep

their cell phones on, as they would receive a phone call when the jury had

been brought in. *Id*. Myrick argues that his defense counsel had not

received a call from the court, and the trial judge refused to let defense counsel show the judge his phone to confirm that no call had been received. *Id*. (referencing N.T. (Trial), 11/3/15, at 5, 6, 7). Myrick further points to the trial judge's comments to defense counsel during a hearing on Myrick's Motion *in limine* to exclude references to phone calls between Myrick and Suah, which originated from the county prison where Myrick was incarcerated, and claims that the comments exhibit bias:

> Defense Counsel: But, Judge, the Commonwealth – the Supreme Court made it clear that –
>
> The Court: Excuse me. Excuse me. Usually when lawyers start out by saying, the Supreme Court has made it very clear, it indicates that they have absolutely no case law to rely on. So, if you have a case, hand it up to me.

Brief for Appellant at 48 (citing N.T. (Trial), 11/3/15, at 12). According to Myrick, the trial judge eventually permitted defense counsel to read from the relevant case, but then indicated that he was "not going to listen to a lot of irrelevant cases[,]" and then ordered defense counsel to sit down. Brief for Appellant at 48 (citing N.T. (Trial), 11/3/15, at 14, 15).

Finally, Myrick claims that, at the outset of jury selection, the trial judge instructed counsel to introduce themselves and give a brief outline of the case; but when defense counsel began, the trial court interrupted him and, subsequently, threatened him in front of the jury. Brief for Appellant at 49 (citing N.T. (Trial), 11/3/15, at 30-31); *see also* N.T. (Trial), 11/3/15, at 50 (wherein the trial court advised defense counsel "I told the D.A. no

speeches; I told you no speeches. You're going to have to pay attention to what I say, otherwise we're going to have problems; do you understand?").

Based on these exchanges, Myrick argues that the trial court erred by denying his Motion for mistrial and recusal. Brief for Appellant at 50-52. Myrick contends that the trial judge's conduct toward defense counsel "was manifestly unreasonable and demonstrated egregious ill will, prejudice, partiality, bias, against [Myrick] and his attorney, which is wholly indicative of [Myrick's] manifestly excessive sentence." *Id*. at 52. Myrick asserts that, based on the trial judge's conduct, he abused his discretion by denying Myrick's Motion for mistrial and recusal. *Id*. at 53.

In its Opinion, the trial court addressed Myrick's third issue, and noted that Myrick had failed to identify in his Concise Statement which witnesses the trial court had purportedly cross-examined in a manner that demonstrated bias to Myrick. *See* Trial Court Opinion, 11/23/16, at 7. Although the trial court reviewed the record in an attempt to "guess" the witnesses to which Myrick referred, the trial court was not required to do so. *See Commonwealth v. Lemon*, 804 A.2d 34, 38 (Pa. Super. 2002) (holding that, when an appellant fails to identify in a vague Rule 1925(b) statement the specific issue he wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in a Rule 1925(a) opinion.). Notably, numerous witnesses testified over the course of Myrick's trial. As Myrick failed to identify in his Concise Statement the

- 14 -

witnesses purportedly cross-examined by the trial court in a manner that demonstrated bias, Myrick failed to preserve the issue for our review. **See Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (holding that this Court may find waiver where a concise statement is too vague).

The trial court further noted that, in his Concise Statement, Myrick failed to identify any of the "insults and taunts of defense counsel [which] arose to bias." **See** Trial Court Opinion, 11/23/16, at 8. As Myrick failed to identify in his concise statement the specific manner in which the trial court insulted and taunted defense counsel, he failed to preserve the issue for our review. **See Lemon**, **supra**; **see also Hansley**, **supra**.

Finally, the trial court addressed Myrick's issue that the trial court threatened defense counsel in front of the jury, and concluded that Myrick's counsel failed to make a timely objection to the trial court's remarks. **See** Trial Court Opinion, 11/23/16, at 9 (wherein the trial court observed that defense counsel did not object to the trial court's remarks until the next day of trial, thereby "denying the court the opportunity to timely address counsel's concerns."). The trial court further determined that its comments were appropriate in light of the court's prior instructions to counsel. **Id**. at 9-10. Based on our careful review, we agree with the reasoning of the trial court, and affirm on this basis as to Myrick's third issue. **See id**. at 9-10.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

- 15 -

Judge Bowes concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/28/18

# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## COURT OF COMMON PLEAS, CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA        :

       v.        :

ISHMAIL MYRICK        :

:       1546 EDA 2016

:       CP-51-CR-0001147-2014

**FILED**

**NOV 23 2016**

Appeals/Post Trial
Office of Judicial Records

## OPINION

## STATEMENT OF THE CASE

Defendant is appealing his convictions on the charges of Aggravated Assault and various related Weapons charges. Defendant is seeking a new trial, complaining that the Court erred in not granting his motion for mistrial, his convictions were against the weight of the evidence and the Court demonstrated bias against the Defense. Defendant also complains that the court abused its discretion in imposing sentence. Defendant's complaints are without merit.

## PROCEDURAL HISTORY

On January 3, 2014, Defendant was arrested and charged with inter alia; Aggravated Assault[1]; Possession of Firearm Prohibited[2]; Carrying a Firearm Without a License[3]; Carrying a Firearm on Public Streets[4]; Possession of an Instrument of Crime[5]; and, Recklessly Endangering Another Person[6]. On November 5, 2015, at the conclusion of his jury trial, Defendant was found guilty on all charges. On January 7, 2016, Defendant was sentenced to consecutive periods of



CP-51-CR-0001147-2014 Comm. v. Myrick, Ishmail
Opinion

7868298301



[1] 18 Pa.C.S.A.§ 2702 §§ A
[2] 18 Pa.C.S.A.§ 6105 §§ A1
[3] 18 Pa.C.S.A.§ 6106 §§ A1
[4] 18 Pa.C.S.A.§ 6108
[5] 18 Pa.C.S.A.§ 907 §§ A
[6] 18 Pa.C.S.A.§ 2705

confinement in a state correctional facility of 8-16 years on the charge of Aggravated Assault, 3-10 years on the charge of Possession of a Firearm Prohibited, 2-5 years on the charge of Carrying a Firearm Without a License, 1-5 years on the charge of Carrying a Firearm in Public, 2-5 years on PIC, and, 1-2 years for Reckless Endangerment for a total aggregate period of confinement of 17 – 43 years.

On May 16, 2016, Defendant timely filed a notice of appeal to the Superior Court of Pennsylvania. On May 24, 2016, this Court filed and served on Defendant an order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a statement of Errors Complained of on Appeal within 21 days of the Court's order. Defendant timely filed his "Statement of Errors Complained of on Appeal" raising five issues, namely:

    a. "The trial court abused its discretion in imposing a manifestly excessive sentence, which stemmed from the trial court's complete disregard of Defendant's mental condition as a mitigating factor, Defendant's rehabilitative needs an improper consideration of Defendant's prior sexual assault case, which was clearly an impermissible factor to be considered at Defendant's sentencing hearing.

    b. The jury's verdict finding Defendant guilty of aggravated assault, carrying a firearm without a license, carrying a firearm on public streets, possessing an instrument of crime and recklessly endangering another person was against the weight of the evidence, where the complainant's allegations that Defendant possessed a firearm which he fired multiple times in his direction, are not supported by the facts, where no firearm was recovered during course of investigation and ballistics evidence, consistent with a shooting, were not recovered by police investigators, at the purported crime scene.

    c. The jury's verdict should be vacated, where the trial court demonstrated bias against the Defense in cross examining witnesses in a manner clearly intended to undermine testimony proffered by those witnesses which was favorable for the Defense, and thereby bolster the Commonwealth's case-in-chief.

2

d. Defendant's conviction and judgment of sentence should be set aside, where the trial court's repeated insults and taunts of defense counsel arose to bias, which prejudiced Defendant's right to a fair trial.

e. The trial court abused its discretion in denying Defendant's motion for mistrial, which argued that the jury panel should have been set aside, because the trial court threatened defense counsel in front t of the jury, with his remark "if you don't do what I tell you, you and I are going to have problems."

Defendant's third, fourth and fifth complaints essentially raise the same issue, therefore, the Court will address them together. The Court will also address Defendant's weight of the evidence issue first and his sentencing issue last.

## EVIDENCE AT TRIAL

The complainant, Nelson Suah, testified that on the morning of January 2, 2014, at approximately 9:10 a.m., he was walking past the corner of 66th Street and Allman Street in the city of Philadelphia, when he was flagged over to a purple minivan driven by Defendant. After getting into the minivan, Defendant asked him to resume selling drugs for him. (N.T., 11/4/15 pg.19) When he refused, Defendant climbed into the back of the minivan, retrieved a silver revolver and returned to the front striking defendant in the face. During a brief struggle Mr. Suah was able to unlock the door of the vehicle and both men fell out. He then pushed Defendant to the ground and fled from the scene. As he was running he heard shots being fired and looked back to see Defendant pointing the gun into the air. (N.T., 11/4/15 pg.20). As a result of the struggle, complainant suffered a laceration to his face.

Ms. Michelle Johnson testified that on the morning of the shooting she was in her office at Joseph W. Catherine Elementary School. At approximately 9:00 a.m. that morning, on hearing what she believed to be gun shots, she looked out her window on to 66th Street and saw a

3

"gentleman" shooting at another "gentleman". She then witnessed one of the men running up the street away from the other man. (N.T., 11/3/15 pgs.74-76, 88)

Philadelphia Police Officer Joel Jean testified that on the morning of the shooting he was on routine patrol with his partner, Officer Robin Song, when they received a radio call for a report of a person with a gun in the area of 65th Street. On responding to the call they were flagged down by complainant who was very frantic and was bleeding from an open wound on the left side of his cheek. (N.T., 11/3/15 pgs.105-107)

Philadelphia Police Officer Robin Song testified that she took a statement from complainant the morning of the shooting. He identified Defendant as his assailant and provided Officer Song with a physical description of the Defendant. (N.T., 11/3/15 pgs.124-126)

## DISCUSSION OF THE ISSUES RAISED

### I. THE DEFENDANT'S VERDICTS WERE NOT AGAINST THE WEIGHT OF THE EVIDENCE.

In his second statement of errors, Defendant complains that "the jury's finding... was against the weight of the evidence, where the Complainant's allegations that Defendant possessed a firearm, which he fired multiple times in his direction are not supported by the facts where no firearm was recovered during the course of investigation and ballistics evidence were not recovered at the crime scene." Despite Defendant's complaint that the verdict was against the weight of the evidence, he appears to be confusing this challenge with a challenge to the sufficiency of the evidence when he states that the verdicts "are not supported by the facts." Defendant's complaint is without merit.

4

In *Commonwealth. v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) our Superior Court held that "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence." "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict...Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice...The judge must establish that the verdict was 'irreconcilably contradictory to incontrovertible facts, human experience of the laws of nature or based on mere conjecture." *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (Internal citations and quotations omitted) "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* at 753 Credibility determinations are made by the fact finder. "While passing upon the credibility of witnesses and the weight of the evidence produced, the finder of fact is free to believe all, part or none of the evidence." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). The Court cannot substitute its judgment for that of the finder of fact. Therefore, we may only reverse the lower court's verdict if it is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004).

5

As noted above, in making a claim that his convictions were against the weight of the evidence, thus challenging the credibility of the Commonwealth's witnesses, Defendant is in essence conceding that there is sufficient evidence to sustain the jury's verdicts. After a careful review of the record, the Court finds that in addition to finding the testimony of Mr. Shua truthful and credible, it was amply corroborated by the testimony of Ms. Johnson and Officers Jean and Song.

The Court further finds, that the evidence at trial was sufficient to support Defendant's convictions. In order to prove actual possession of a weapon, the evidence must show that Defendant had the power to control such item with intent to exercise control over them. *Commonwealth v. Bentley*, 419 A.2d 85 (Pa. Super. 1980) "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971) Constructive possession may be established by the totality of the circumstances. *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013)

Defendant is arguing that the evidence relied upon by the Court is insufficient to prove that he possessed a firearm, where no firearm or ballistics evidence consistent with a shooting was recovered from the scene. After a careful review of the record, the Court finds that the evidence at trial was sufficient to establish Defendant possessed a firearm. As noted above, Mr. Suah gave a statement to police just moments after the incident, identifying Defendant as the one who assaulted him with the gun. He also testified at trial that on the morning of the incident, Defendant struck him in the face with what felt like a gun. (N.T., 11/4/15 pg. 10, 12). Moreover, Mr. Suah's testimony that Defendant possessed a gun was corroborated by Ms. Johnson who testified that she heard gun shots and witnessed two men outside her window the morning of the shooting. Viewing

6

the totality of the circumstances, the Court finds that the finder of fact could reasonably infer that Defendant had the ability and intent to control the firearm and, was in fact in possession of a firearm

## II.  DEFENDANT WAS NOT PREJUDICED BY THE COURT'S COMMENTS AND QUESTIONS DURING TRIAL.

Defendant, in his third, fourth and fifth statement of errors, complains that the Court "demonstrated bias against the Defense... prejudiced Defendant's right to a fair trial...and abused its discretion in denying Defendant's motion for mistrial." These complaints are without merit.

Defendant, in his third statement of errors, complains that "the trial court demonstrated bias against the Defense in cross examining witnesses in a manner clearly intended to undermine testimony proffered by those witnesses which was favorable for the Defense." A judge has the "inherent right, and, at times, the duty to question witnesses to clarify existing facts and to elicit new information." *Commonwealth v. Hogentogler*, 53 A.3d 866, 880 (Pa. Super. 2012) citing *Commonwealth v. Folino*, 439 A.2d 145, 148 (Pa. Super. 1981). A trial judge must be "cautious that such questioning of witnesses not show bias or a belief in the credibility of particular witnesses." *Id.* When such questioning is "not unduly protracted or conducted in a biased manner, the judge's discretion in questioning witnesses will not be found erroneous." *Id.*

After a careful review of the record, the Court can identify only one instance at trial where the Court questioned a witness during examination. In that instance, the Defense was cross-examining the complainant about the gun he testified Defendant used on the morning of the incident. Perceiving some confusion during this cross-examination as to whether Defense counsel was referring to use of the gun inside or outside of the van, the Court intervened and asked the complainant to clarify his testimony. (N.T., 11/4/15 pgs. 64-66). This questioning was necessary

7

to clarify the testimony of the complainant. Moreover, in its final instructions to the jury, the Court charged them:

> "... if at any time I do or say anything, either during the trial or now, during these instructions, that in any way, implies my opinion with regard to the evidence, the witnesses, what the verdict should be, I want to tell you two things; number one, I have no opinion. And second, if I had an opinion it would be the least well-informed opinion in this courtroom. Because, as I told you at the outset, I can hardly see these witnesses. I can't see facial expressions, I can't see gestures. And, I get distracted. I get distracted by the paperwork I have to do, managing the courtroom, talking to the courtroom staff about other cases that are scheduled here. So, number one, I have no opinion. Second, if I had an opinion, you should ignore it. The only opinion that matters in this case with regard to the evidence, the witnesses, and, ultimately, the verdict, is your opinion. (N.T., 11/5/15 pg. 23-24)

Defendant, in his fifth complaint, asserts that "Defendant's conviction and judgment of sentence should be set aside, where the trial court's repeated insults and taunts of defense counsel arose to bias, which prejudiced Defendant's right to a fair trial." The Pennsylvania Rules of Appellate Procedure require a Statement of Errors to "concisely identify each ruling or error that the appellant intends to challenge *with sufficient detail* to identify all pertinent issues for the judge." **PA. R. APP. P.** 1925(b)(4)(ii) (emphasis added). "A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order." ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa. Super. Ct. 2001)

Defendant, in his statement of errors, fails to identify any specific "insults or taunts" on the part of the Court which arose to bias therefore Defendant's claims are deemed to be waived for vagueness. In addition, a careful review of the record fails to reveal any such instances supporting Defendant's complaint.

In his fourth complaint, Defendant states that "the trial court abused its discretion in denying Defendant's motion for mistrial, which argued that the jury panel should have been set aside, because, during voir dire, the trial court "threatened defense counsel" in front of the jury, with his remark 'if you don't do what I tell you, you and I are going to have problems.' "When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." *Commonwealth v. Boring*, 684 A.2d 561, 568 ( Pa. Super.1996) citing *Commonwealth v. Meekins*, 403 A.2d 591, 596 (Pa. Super. 1979) Pursuant to **Pa.R.Crim.P.** 1118(b), in order for a motion for a mistrial to be timely, it must be made when the alleged prejudicial event occurs. Otherwise, the Judge may declare a mistrial only for reasons of manifest necessity. **Pa.R.Crim.P.** 605(b).

Here, defense counsel neither objected to, nor made a motion for a mistrial, after the Court made the comment at issue. Instead, counsel did not make his motion for a mistrial until the next day, denying the court the opportunity to timely address counsel's concerns. Since this motion was made in an untimely fashion, this complaint is deemed waived.

Prior to commencing vior dire, the Court instructed counsel that in addressing the panel there were to be "No speeches, just a thumbnail sketch, and read a list of potential witnesses" N.T., 11/2/15 pg. 18). Immediately upon addressing the jury panel, Defense counsel began to comment on opposing counsel's summary. (N.T., 11/2/15 pg. 30) As noted above, the Court reminded counsel of his previous instructions, stating "you are going to have to pay attention to what I say, otherwise, were going to have problems; do you understand?" (N.T., 11/2/15 pg. 31) The following day Defense counsel moved for a mistrial arguing that the Court's comments prejudiced the Defendant.

The remedy of a mistrial is an "extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012). "The declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case." *Id.* at 877. The Court is therefore "vested with discretion to grant a mistrial whenever the alleged prejudicial event may have the effect of depriving the defendant of a fair trial." *Id.* at 878. The court must assess whether misconduct or prejudicial error occurred and the degree of any resulting prejudice. *Id.* Here, the Court finds its admonishment of Defense Counsel to be appropriate in light of the Courts prior instructions.

## III. DEFENDANT'S SENTENCE WAS APPROPRIATE.

Defendant, in his first statement of errors, complains the Court "abused its discretion in imposing a manifestly excessive sentence, which stemmed from the trial court's complete disregard of Defendant's mental condition...Defendant's rehabilitative needs and improper consideration of Defendant's prior sexual assault case." Defendant's complaint is without merit.

The provisions of the sentencing code provides in part, at 42 Pa. C.S. A. 972: "(b)....the Court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of Defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing."

It is well established that in reviewing sentencing matters, the trial court is accorded "great weight, as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Canfield,* 639

10

A.2d 46, 50 (Pa. Super. 1994) (internal citation omitted) Further, a sentence imposed by the sentencing judge will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Galletta*, 864 A.2d 532, 34 (Pa. Super. 2004).

The Supreme Court of Pennsylvania in *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007), citing its decisions in *Commonwealth v. Smith*, 543 Pa. 566, 673 A.2d 893, at 895 (Pa. 1996), held an abuse of discretion is more than a mere error of judgment, and a sentencing court will not have abused its discretion unless "the record disclosed that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.......The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it."

Pennsylvania's sentencing guidelines are advisory only. *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 2001). The only line that a sentence may not cross is the statutory maximum sentence. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1119 (Pa. 2007) Therefore, as long as the sentencing court does not impose a sentence beyond the statutory maximum, the court may "deviate from the guidelines and impose consecutively sentences, when necessary, to impose a sentence that takes into account the protection of the public, the rehabilitative needs of Defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 207 (Pa. Super. 2001). Furthermore, our Superior Court, in *Commonwealth v. Mastromarino*, 2010 Pa. Super. 128, P9 (Pa. Super. 2010), reiterated that; "Long standing precedent of this Court recognizes that 42 Pa.C.S.A. §9721, affords the sentencing court's discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed."

11

In considering Defendant's sentence, the Court was well aware of the sentencing guideline ranges. Counsel agreed that the guideline offense gravity score (OGS) for the charge of aggravated assault, the most serious crime, was 10 and that Defendant's prior record score (PRS) was RFEL. Applying the deadly weapons enhancement, the guidelines recommended sentence was 90-102 months ± 12 months of incarceration. (N.T., 1/7/016 pgs. 7-9, 26-27) The Court sentenced Defendant within the guideline range on each count and imposed an overall sentence of 17-43 years.

Since Defendant is not complaining that his individual sentences exceed guidelines, he is in essence complaining that the Court abused its discretion in imposing consecutive sentences. Prior to imposing sentence, the Court heard argument of counsel, reviewed the presentence investigation report, reviewed Counsels' memorandum, as well as Defendant's mental health evaluation. (N.T. 1/7/2-16 pgs. 45-48). In light of this, the Court determined Defendant was at a serious risk for recidivism and had little chance of rehabilitation. In imposing consecutive sentences the Court stated, "I'm not running these sentences concurrently, they're running consecutively. They're not quite what the DA is recommending, but they're what I think is appropriate considering – it's not a matter of punishment, it's more a matter of protecting the community." (N.T. 1/7/2-16 pgs. 46-47).

Defendant also misstates the record when he complains that the court "completely disregarded" Defendant's mental condition and rehabilitative needs as mitigating factors when imposing sentence. On imposing consecutive sentences, the court specifically addressed Defendant's mental condition and his rehabilitative needs, stating:

"Anybody who thinks that they can just jump out of a vehicle and start firing down the street at somebody because of a dispute over them helping with drug sales, or -- I mean, just, he really doesn't have much of a conscience, or he doesn't have an editor. He doesn't have somebody speaking to him in his head, telling him, this is not a good idea. He acts

12

on impulse and I don't know what kind of counseling he's going to get to help resolve that. (N.T., 1/7/16 pg. 46).

Everything I've heard today, so far, all of these sad stories, just paint a picture of someone whose problems are so great, whose behaviors are so ingrained, that he will not be rehabilitated.

And on the transcript from the prison, the prison phone calls, at one point D, D is the Defendant, says, Because I did time before, time is not the problem. So I'm not even hopeful that a long prison sentence would convince him to change his lifestyle.

He's reached a point where he thinks he's done time, and he can do time. Time is not the problem. So I don't know what we have left, as far as rehabilitating your client. (N.T. 1/7/16 pgs.39-40)

I understand the issues raised by his mother, but I'm still concerned about the likelihood of rehabilitation. He's got to go to prison, state prison, and he's got to be there for some significant amount of time." (N.T., 1/7/16 pg. 46).

Additionally, Defendant's mental condition does not entitle him to a reduction in sentence. **Commonwealth v. Yasipour**, 957 A.2d 734, 742 (Pa. Super. 2008) In addressing the sentencing of persons found to be guilty but mentally ill, 42 Pa.C.S.A. § 9727, provides in relevant part; "(a)....A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S.A. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense."

Defendant also complains that the Court improperly considered his prior sexual assault charge when imposing sentence. In imposing sentence, the Court may "receive any relevant information for the purposes of determining the proper penalty." **Commonwealth v. Medley**, 725 A.2d 1225, 1229 (Pa. Super. 1999) This includes evidence of prior arrests, even where a conviction did not arise from that behavior, so long as the court recognizes that Defendant had not been convicted of the prior charges. **Commonwealth v. Allen**, 489 A.2d 906, 911 (Pa. Super.1985). In considering Defendant's prior sexual assault charge, the Court noted that Defendant was not

13

convicted of sexual assault and that counsel's reading of the affidavit of probable cause concerned only "allegations" regarding Defendant behavior.

> "When she says, "attempted rape," my understanding is that she's referring to his arrest for attempted rape. We all understand he wasn't convicted of that, he was convicted of terroristic threats." (N.T., 1/7/16 pg. 21-22)

## CONCLUSION

The Court finds that Defendant's convictions were supported by sufficient credible evidence and that his sentence was appropriate.

BY THE COURT:

November 23, 2016

_____, J.
HON. CHARLES J. CUNNINGHAM, III

14